**Harry W. McCOY, Appellant,**

v.

**Floyd T. BLAKELY, Personal Representative and Administrator of the Estate of Mary Nadine Catron, Deceased, Appellee.**

**No. 15067.**

United States Court of Appeals Eighth Circuit.

Dec. 2, 1954.

Rehearing Denied Jan. 31, 1955.

C. F. Connolly, Omaha, Neb. (Robert G. Fraser and Fraser, Connolly, Crofoot & Wenstrand, Omaha, Neb., on the brief), for appellant.

Wiley E. Mayne, Sioux City, Iowa (Jesse E. Marshall, Sioux City, Iowa, Harry N. Larson, Wakefield, Neb., and Shull & Marshall, Sioux City, Iowa, on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

This is an appeal from an order overruling a motion for judgment notwithstanding the verdict or for a new trial. The action was for damages arising out of an automobile-truck collision. The complaint was in two counts, one for damages for wrongful death and the second for damages to the decedent's automobile and for funeral expenses. Trial resulted in a jury verdict for plaintiff-appellee on both counts. Judgment was entered thereon. After denial of de-fendant-appellant's motion this appeal was instituted. The parties will be referred to herein as they were designated in the court below.

The accident giving rise to this action occurred on February 23, 1952. Mary Catron, plaintiff's decedent, was driving west on Highway No. 20 in Dixon County, Nebraska, accompanied by Mrs. Norman Anderson and Irene Manto. The defendant was driving east in a 1941 GMC one-and-a-half-ton stock truck. The two vehicles collided, the left front corner of the decedent's automobile coming in contact with the left side of the defendant's truck near the left front corner of the stock rack. The impact, as established by the testimony of several witnesses, occurred north of the center line of the pavement; in other words, on the decedent's side of the road.

Defendant's appeal is based on five points which will be separately considered.

Point No. 1 attacks the jurisdiction of the Federal Court. The deceased, Mary Catron, was a citizen and resident of the State of Iowa. She had been visiting her parents who resided in Nebraska, the state where the accident resulting in her death occurred. Following her death, an estate was created in LeMars, Plymouth County, Iowa, her place of residence. Her father, Ernest Catron of Battle Creek, Nebraska, was first appointed administrator on March 3, 1952 by the Iowa Probate Court. Ten months later he resigned and the present plaintiff, Floyd T. Blakely, a resident of LeMars, Iowa, was appointed in his stead. Blakely, under authorization from the Iowa Probate Court, instituted this action in the United States District Court for the District of Nebraska. This, the defendant contends, was contrary to law. His position is that the sole purpose of the resignation of Ernest Catron was to permit the appointment of an Iowa resident as administrator in order to create the diversity of citizenship requisite to

this action, and that it therefore violated Section 1359 of Title 28 U.S.C.A. That section is as follows:

"*Parties collusively joined or made.* A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

Even if, as contended by the defendant, the appointment of Blakely was for the sole purpose of creating diversity of citizenship in order to invoke the jurisdiction of the Federal Court, that fact, without more, would not establish the alleged violation of the relied-upon statute. As was stated by this Court in Curb and Gutter Dist. No. 37 of City of Fayetteville v. Parrish, 8 Cir., 1940, 110 F.2d 902, 906, a case involving the appointment of a non-resident trustee for the purpose of creating diversity of citizenship in order to establish the jurisdiction of the Federal Court:

" * * *, the motive which may have actuated or induced the bondholders to select a non-resident trustee is immaterial. The appointment and qualification of the plaintiff trustee was real and bona fide. It was not merely colorable or feigned. No wrongful act was perpetrated in invoking the jurisdiction of this Court. In other words, the bondholders simply did that which was lawful and no fraud can be perpetrated thereon. It is not wrongful for parties to prefer to litigate the subject matter of a controversy in federal court if no improper act is done in furtherance thereof."

Such is the situation in the present case. The record shows no collusion or impropriety in the appointment of Blakely. Ernest Catron testified that he resigned as administrator because, living so far away from LeMars, Iowa, he felt he could not properly take care of the estate. The appointment of Blakely was made because he was a resident of LeMars, Iowa, and a former friend or associate of the deceased. The trial court made a specific finding that his appointment was not improper or collusive, and we think that the record establishes that no wrongful act was perpetrated in invoking the jurisdiction of the Federal Court. See Mecom v. Fitzsimmons Drilling Co., 1931, 284 U.S. 183, 189, 52 S.Ct. 84, 76 L.Ed. 233, and Harrison v. Love, 6 Cir., 1936, 81 F.2d 115, 117.

■ Point No. 2 also attacks the jurisdiction of the Federal Court. Defendant contends that all the real parties in interest, the parents of the deceased and the defendant, are residents of Nebraska, and that accordingly the diversity of citizenship required for Federal Court jurisdiction does not exist. He urges that the parents of the deceased, not the administrator, are the real parties in interest authorized to bring this action under the Nebraska wrongful death statute. He relies on State of Nebraska v. Northwestern Engineering Co., D.C.Neb.1946, 69 F.Supp. 347, as authority for the proposition that the citizenship of the parents, not that of the administrator, controls the question of removability through diversity of citizenship in a wrongful death action. We cannot construe the cited case in such a manner. In that case, the State of Nebraska instituted a wrongful death action together with a second cause for damages to the automobile operated by the decedent which belonged to the State of Nebraska. The defendants, residents of South Dakota, removed the action to the Federal Court on grounds of diversity. Although a state is not a "citizen" within the contemplation of the Removal Act, the Federal Court upheld the removal of the first cause, the wrongful death cause, since the real party in interest was the administratrix, the state being merely a nominal party. The court, after reviewing the Nebraska decisions, stated at page 353:

"The foregoing decisions compel the conclusion that the administratrix * * * is the real party in

interest, or the real plaintiff, as respects the first cause of action."

It is interesting to note that the decision in the case cited above was rendered by Judge Donohoe who was also the trial judge in the instant case. In overruling the defendant's motion for judgment notwithstanding the verdict or for a new trial, he rejected defendant's argument and held that the instant case was controlled by Mecom v. Fitzsimmons Co., supra. We agree that what was said by the United States Supreme Court therein, 284 U.S. at page 186, 52 S.Ct. at page 85, is controlling:

> "It is settled that the federal courts have jurisdiction of suits by and against executors and administrators if their citizenship be diverse from that of the opposing party, although their testators or intestates might not have been entitled to sue or been liable to suit in those courts for want of diversity of citizenship. (Cases cited.)

> \* \* \* \* \* \*

> "The petitioner insists that where an administrator is required to bring the suit under a statute giving a right to recover for death by wrongful act, and is, as here, charged with the responsibility for the conduct or settlement of such suit and the distribution of its proceeds to the persons entitled under the statute, and is liable upon his official bond for failure to act with diligence and fidelity, he is the real party in interest, and his citizenship, rather than that of the beneficiaries, is determinative of federal jurisdiction. This we think is the correct view."

Defendant attempts to distinguish the Mecom case from the case at bar, arguing that to permit this action to be brought in the Federal Court will defeat the purpose of the Nebraska statute creating the cause of action since the avails of the suit will be distributed in accordance with Iowa law rather than Nebraska law. There is no merit in such an argument. Iowa is in accord with the principle that the law of the place of wrong governs the right of action for death; thus under Iowa law the avails will be distributed in accordance with the Nebraska statute creating the cause of action. In re Williams' Estate, 1906, 130 Iowa 553, 107 N.W. 608. We think that proper diversity of citizenship was present and that the Federal Court did have jurisdiction.

In Point No. 3 the defendant argues that the verdict is contrary to the evidence and impossible under the physical facts, and hence cannot stand. He urges that the accident could not possibly have occurred in the specific manner described by one of the plaintiff's witnesses, Mrs. Norman Anderson. He also relies upon the physical fact that the left front corner of the decedent's automobile came in contact with the center of the left side of the defendant's truck, contending that this indicates that the decedent swung to her left across the center line into the side of the defendant's truck, propelling the rear of the truck in a southeasterly direction which, together with the forward motion of the truck, caused the left front corner thereof to end up north of the center line of the pavement.

The record shows that Mrs. Anderson, who was riding with the decedent at the time of the accident, testified that the defendant's truck swerved and came toward their car. The evidence also conclusively established that the decedent's car came in contact with the center of the left side of the defendant's truck. However, in view of the other evidence presented, such facts do not defeat the plaintiff's right to recover. Briefly, the evidence presented was as follows:

Mrs. Anderson, in addition to testifying that the defendant's truck swerved and came toward their car, stated that the car in which she was riding was at all times well over on its own side of the

road and was proceeding at a lawful speed, and that the box of the defendant's truck was well over onto the decedent's side of the center line at the moment of the collision. A State Highway Patrolman, who arrived at the scene almost immediately after the accident occurred, found the defendant's truck in the center of the highway, blocking traffic, with defendant still seated behind the steering wheel, and the decedent's automobile down the embankment to the north of the highway. He testified that the defendant was, in his opinion, under the influence of intoxicating liquor sufficient to impair his ability to drive; that his speech was impaired, heavy and hard to understand; that his eyes were bloodshot; that his walk was unsteady; and that he smelled of intoxicating liquor. Two other witnesses described similar symptoms of intoxication, picturing defendant as "intoxicated" and "very intoxicated". When the patrolman first arrived at the scene of the accident, the defendant stated to him, "If I hadn't swerved over I would have been all right." From an examination of the vehicles and the highway, the patrolman determined that the point of collision was approximately five feet north of the center line of the pavement.

Defendant claimed that he was at all times on his own side of the highway and that he noticed the decedent's car coming toward him, but had no intimation of any danger until the crash. He admitted having had three beers but denied feeling the effects of the liquor. Three witnesses testifying in his behalf also claimed that he was sober. One of these witnesses, an eyewitness of the mishap, testified that he noticed the decedent's car swerve a little to the north and a little back just before the collision. He also testified that the defendant's truck was on its own side of the pavement and did not swerve or change its course during the time he saw it.

■ The evidence, when viewed in its entirety, clearly presents a question of fact for the jurors. Although the testimony is to some degree conflicting, it could well have been, as pointed out by the trial judge in his comments to the jurors with reference to the evidence, that the defendant had swerved to the north of the center line of the pavement and at the time of the impact was attempting to get back to the south or his own side thereof, so that the front ends of both vehicles passed safely but the left front corner of the decedent's automobile came in contact with the left side of the defendant's truck while it was still out of its own lane of travel and occupying that portion of the highway referred to as decedent's. Plaintiff's case does not stand or fall solely on the testimony of Mrs. Anderson, nor was it incumbent on the plaintiff to show the precise manner in which the accident occurred. The plaintiff was required to show only that the defendant was guilty of negligence which proximately caused the accident.

■ The evidence concerning the question of negligence was not such that reasonable minds could reach but one conclusion, thus that question was properly presented to the jurors, and they having determined it upon substantial evidence, their view must be sustained. This court cannot invade the province of the jury in order to weigh and consider conflicting testimony. We can only determine whether there is present in the record testimony which fairly tends to sustain the jury's verdict. Troxell v. Delaware, L. & W. R. Co., 1913, 227 U.S. 434, 444, 33 S.Ct. 274, 57 L.Ed. 586. In making such a determination, the plaintiff is entitled to all the inferences fairly deducible from the evidence. See Gunning v. Cooley, 1930, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Mattson v. Central Electric & Gas Co., 8 Cir., 1949, 174 F.2d 215; Stolting v. Everett, 1952, 155 Neb. 292, 51 N.W.2d 603. We think the evidence clearly presents a sufficient basis for the jury's verdict and therefore it must stand.

■ Under Point No. 4 defendant complains because of the Court's failure

to give his requested instruction No. 19, which reads as follows:

> "You are instructed that if you find from the evidence that any left turn of defendant's cattle truck, as claimed by the plaintiff, would place the front part of same in such a position that a collision could not have occurred between plaintiff's westbound Plymouth automobile and the running board, front body corner, and dual tires on the left side of such cattle truck, you will necessarily find that the accident could not have been caused and brought about as contended by the plaintiff, and your verdict must be for the defendant."

The trial court properly refused to give the requested instruction. What was said by the United States Supreme Court in Clement v. Packer, 1888, 125 U.S. 309, 327, 8 S.Ct. 907, 915, 31 L.Ed. 721, appropriately expresses the feelings of this court:

> " * * * The direct tendency, if not the avowed purpose, of the statements contained in this charge, is to withdraw from the consideration of the jury a very considerable amount of pertinent and important testimony * * *."

The instruction, as requested, would have tended to direct the attention of the jurors to only a portion of the evidence —the testimony of Mrs. Anderson that the truck swerved toward them and the fact that the decedent's car struck the center of the left side of defendant's truck. It would have eliminated the remainder of the plaintiff's evidence from the consideration of the jury, thereby confining the plaintiff's possibility of recovery to the sole theory that the defendant's truck swerved into the path of the oncoming car of the decedent. Gone would be the theory suggested by the trial judge in his comments on the evidence to the jury, supra, together with any other theories fairly deducible from the evidence. We find no error in the refusal.

■ Point No. 5 is directed mainly at the trial judge's comments with reference to the evidence. After properly cautioning the jury to the effect that they were in no way bound by the statements or the opinion of the Court and that they could utterly disregard such comments, the trial judge proceeded to express his opinion as to how the accident occurred. Those comments did not go beyond permissible boundaries and we find no error in his making them.

■ A trial judge has not only the right, but also the duty to guide and lead the jurors in the interests of justice. As was aptly stated by this court in Rudd v. United States, 8 Cir., 1909, 173 F. 912, 914:

> "A judge should not be a mere automatic oracle of the law, but a living participant in the trial, and so far as the limitations of his position permit should see that justice is done."

■ The right to comment must be judiciously exercised and the jurors must be clearly advised that the province of determining the factual questions remains theirs. In Buchanan v. United States, 8 Cir., 1926, 15 F.2d 496, 498, this court stated clearly the permissible limitations in making such comments:

> "Under the rule, as stated and applied by the Supreme Court, it seems that, when a judge expresses his opinion as to the facts to the jury, making it clear that it is nothing but his opinion, and not binding upon them in any way, and that it is their duty and responsibility to determine all of the facts, he is within his rights, and that he is only subject to reversal when his comments upon the evidence or opinions as to the facts amount to partisan argument or advocacy, or constitute an appeal to passion or prejudice."

The comments in the instant case were sufficiently guarded to come within these limitations.

Finding no error in the record, the case is affirmed.