James **DOUGHERTY**, Guardian of the
Estate of Elaine R. Erickson, a
minor, Plaintiff,

v.

Leslie **OBERG**, Defendant.

No. 2–68–Civ.–308.

United States District Court
D. Minnesota,
Third Division.

March 28, 1969.

John E. Von Holtum, Mott, Grose, Von Holtum & Hefferan, Worthington, Minn., for plaintiff.

Arthur J. Donnelly, Stringer, Donnelly & Sharood, St. Paul, Minn., for defendant.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

The question raised by motion to dismiss in this diversity negligence action is whether a non-resident guardian of a Minnesota infant may maintain an action against a Minnesota defendant under the federal diversity statute. We think not.

The action is one to recover damages for personal injuries to a six-year-old Minnesota citizen, Elaine Erickson, sustained in a motor vehicle-tractor crash on a Minnesota highway. The defendant, Leslie Oberg, is also a Minnesota citizen.

The action is formally brought in the name of James Dougherty as duly appointed guardian of Elaine Erickson's estate. Dougherty is a citizen of South Dakota. A guardian is entitled to sue in his own name for the benefit of his ward's estate. F.R.Civ.P. Rule 17(a) 28 U.S.C.A.

Jurisdiction is posited on the existence of diverse citizenship between the defendant, of Minnesota, and the guardian, Dougherty, a citizen of South Dakota. Before his appointment, Dougherty had no connection or acquaintance with his ward, Elaine, or her parents, all of whom are living, and are citizens of Minnesota. Dougherty's appointment was arranged by the offices of an attorney associated with the attorney representing plaintiff in this suit. The sole motive for the appointment, as candidly admitted by the plaintiff, was to create a diversity of parties as a base for federal jurisdiction. It is fair to assume that the sole distinctive quality recommending Dougherty as a guardian for Elaine Erickson was his South Dakota, and so diverse, citizenship.

The defendant has moved to dismiss the complaint on the ground that "the case is one of artificial or manufactured diversity, in which the out of state guardian was appointed solely for the purpose of creating an apparent [sic] Federal jurisdiction."

The jurisdiction of federal courts is a limited jurisdiction. This limited aspect is in part a manifestation of the recognized need for a delicate balance between national and state domains of power. Federal courts are bound to be especially cautious in the exercise of their diversity jurisdiction, which because of its concurrent nature in matters involving questions of state law, creates

a peculiar risk that the proper boundaries of judicial power will be overlooked. Thus, statutes conferring diversity jurisdiction are to be strictly construed in the light of their purpose to provide an alternative forum for out-of-state litigants who fear the hazards of partiality sometimes found in state tribunals. See e. g. Pease v. Peck, 59 U.S. 595, 18 How. 595, 15 L.Ed. 518 (1855); Ziady v. Curley, 396 F.2d 873 (4th Cir. 1968); Hedberg v. State Farm Mut. Auto. Ins. Co., 350 F. 2d 924, 928 (8th Cir. 1965); 1 Moore's Federal Practice ¶ 0.71 [3.–1, –2]. The cautious eye which federal courts have developed in this area is exhibited in the rule that a presumption exists against diversity which the party alleging its existence has the burden to refute. See, e. g. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Ferrara v. Philadelphia Laboratories, Inc., 272 F.Supp. 1000, 1014–1016 (D.Vt.1967). Among the Congressional checks erected to implement this balance and limitation is § 1359, Title 28 U.S.C.A.:

"A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

■■ I find that, as a matter of fact, the plaintiff Dougherty was appointed a guardian solely to create the jurisdictional base necessary to invoke the jurisdiction of this court; and that such a strategy, standing bare, obvious, and without even a hint of other decorative justification for the appointment is, as a matter of law, improper within the sense of § 1359. It is clear that all persons whose substantive and real interests will be touched in any sense by the outcome of this litigation—Elaine Erickson, her parents, and Leslie Oberg—are Minnesota citizens. There exists no judicially cognizable need for the occasional protection theoretically afforded by federal diversity jurisdiction.

However, some prior cases suggest that the mere fact that the choice of a particular representative was motivated by his diverse citizenship is not, standing alone, sufficient to support a holding that jurisdiction has been improperly or collusively invoked in the sense of § 1359. Not infrequently, this guideline has been promoted to the status of a rule absolutely forbidding the examination of motives. The sources of this unfortunate absolutist approach are distilled in the case of Corabi v. Auto Racing, Inc., 264 F.2d 784, 75 A.L.R.2d 711 (3d Cir. 1959).[1] There, an Ohio citizen was substituted as administrator of a Pennsylvania estate for the express purpose of affecting diversity. The court found the substitution to be a due and real transfer of power and interest, and so sufficient to escape the prohibition of § 1359. The standards inherent in the words "collusive" and "improper" were found to be applicable only to test the real legal character of the substitution. The underlying motive and substantive effect of the arrangement were regarded as not relevant.

This refusal to examine motives appeared to have some basis in high authority. In Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681 (1928), the Supreme Court found that where a corporation, whose trade was plied exclusively in Kentucky, reincorporated, with a resultant complete transfer of assets, in Tennessee, the motive for the change in citizenship, so long as the change was complete and real, was not a proper subject for consideration upon a jurisdictional challenge. It is significant, however, that the Court examined the substantiality and permanence of the reincorporation. Cf. Lehigh Min. & Mfg. Co. v. Kelly, 160 U.S. 327, 16 S.Ct. 307, 40 L.Ed. 444 (1895), discussed infra.

Personal representatives seeking to avoid the force of § 1359 have frequently placed substantial reliance on the case of

1. The *Corabi* case recently has been overruled. See discussion, infra.

Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931). There, a non-diverse administrator was substituted in order to *destroy* diversity and prevent defendant's removal. While the Court noted that it would not look at the plaintiff's motives, the case is inapposite to the present situation, inasmuch as § 1359 deals with the invocation of jurisdiction, not, as in *Mecom,* with its destruction. As frequent reference has been made to Mexican Central Ry. Co. v. Eckman, 187 U.S. 429, 23 S.Ct. 211, 47 L.Ed. 245 (1903). There a Texas guardian of an Illinois minor had sued a Massachusetts corporation in a federal court in Texas. The defendant, not disputing the existence of diversity, argued that the Texas venue was improper. The Court disagreed, finding that the guardian's interest and so his Texas residence was a sufficient basis to support the Texas venue. The abuse at which § 1359 is aimed, improper invocation of jurisdiction, was thus not involved.

Upon this thin and rather elusive authority, the semblance of a rule has evolved, more through accretion than thoughtful analysis, to the effect that so long as the personal representative is duly appointed by state law, the real nature and motivation of the appointment will not be scrutinized. Thus in Minnehaha County, S. D. v. Kelley, 150 F.2d 356 (8th Cir. 1945), the court found that the due appointment of a California administrator was sufficient to support diversity without further examination. There is no discussion of § 1359; and the cases of *Mecom, supra,* and *Eckman, supra,* are cited as ruling authority.

More detailed consideration can be found in McCoy v. Blakely, 217 F.2d 227 (8th Cir. 1954). There, the Nebraska father of an Iowa decedent resigned as administrator in favor of an Iowa citizen who was a close friend of the decedent. The court said:

"Even if, as contended by the defendant, the appointment of Blakely was for the sole purpose of creating diversity of citizenship in order to invoke the jurisdiction of the Federal Court, that fact, *without more,* would not establish the alleged violation of the relied-upon statute [§ 1359]." 217 F.2d at 230. (Emphasis added.)

The court noted that Blakely was closer to the bulk of the assets, and had been a close friend of the decedent. After searching, the court found that "[t]he record shows no collusion or impropriety * * *." 217 F.2d at 230. What is significant, and what often has been overlooked, is that the validity of the appointment did not prevent the court from searching the record, apparently for the "more" emphasized in the above quotation. Had "more" been found, it may have established collusion or impropriety.

A § 1359 challenge was as well rejected in Loegering v. County of Todd, Minn., 185 F.Supp. 134 (D.Minn.1960), aff'd, 297 F.2d 470 (8th Cir. 1961). A Montana resident was appointed trustee to bring a wrongful death action upon the death of a Minnesota citizen. In upholding the diversity thereby created, it was noted that the Montana plaintiff-trustee was a daughter of decedent, and so in an action brought under the Minnesota wrongful death act, M.S.A. 573.02, she was a not unnatural choice to serve as trustee, and was a possible beneficiary of any recovery thereunder.

In both *Blakely* and *Loegering* reasons independent of diverse citizenship justified the appointment of the respective personal representatives. But these cases may not be read as establishing a mechanic rule that so long as the appointment of a representative who has capacity to sue is, under state law, valid, a § 1359 challenge must fail. See, e. g. 3A Moore's Federal Practice ¶ 17.05 [3.–3], criticizing such rigidity as was spawned by *Corabi, supra.* Rather, they are determinations in a particular factual setting that the transfers were not violative of the mandate of § 1359. That is, the respective appointments were justifiable for reasons inherent in the role of the given type of representative.

The validity of a particular appointment or transfer under state law is but one proper consideration. In Lehigh Min. & Mfg. Co. v. Kelly, 160 U.S. 327, 16 S.Ct. 307, 40 L.Ed. 444 (1895), a Virginia corporation disputed the title to a tract of Virginia land with a Virginia resident. In order to create diversity, the shareholders of the Virginia corporation set up a Pennsylvania corporation to which they conveyed the disputed real interest. While the Court agreed that motive alone was insufficient reason to ignore the resultant diversity, it found that the lack of real substance in the transaction was. While the Pennsylvania corporation was a legal entity under state law, its apparent temporary and straw nature, wholly under the control of the shareholders of the Virginia corporation, and created solely to hold the alleged real interest as a diverse party, was found sufficient to activate the statutory predecessor to § 1359 and destroy jurisdiction.

This realistic approach has been applied in several recent cases which control the present dispute. McSparran v. Weist, 402 F.2d 867 (3d Cir. 1968) and Esposito v. Emery, 402 F.2d 878 (3d Cir. 1968), involved suits by non-resident guardians who were appointed solely to create diversity of citizenship. The court noted that the determination of impropriety and collusiveness under § 1359 were questions of fact. While recognizing that motive alone is insufficient to activate the deadbolt of § 1359, the court regarded purpose as at least one suitable modality in the overall determination. Thus, the Corabi case, supra, with its self-imposed blinders, was expressly overruled. Most significant was the finding that the guardians were in effect only straw parties with no real and substantive interest in the outcome of the litigation, and no truly fiduciary relationship to the injured minors.

In Ziady v. Curley, 396 F.2d 873 (4th Cir. 1968), the court recognized that when the purpose of appointing a guardian was simply to fulfil the formality of providing a representative with capacity to sue, the citizenship of the minor ward, as the person truly interested, must control for purposes of diversity jurisdiction.

A comprehensive consideration of the problem appears in Ferrara v. Philadelphia Laboratories, Inc., 272 F.Supp. 1000 (D.Vt.1967); aff'd, 393 F.2d 934 (2d Cir. 1968). The district court in Ferrara noted and discussed several factors appropriate to the empirical inquiry ordained by § 1359. The very words of the statute, "improperly or collusively," were found to direct a court to an examination of motives. Furthermore, the practical, rather than legal reality of the transaction was said to be most significant. In Ferrara, the injured persons had conveyed all claims and damages to a revocable trust, naming as trustee an unrelated, non-resident stranger. The trustee, while holding revocable legal title to the corpus of the trust, had no real interest therein, nor any risk dependent upon the outcome of the lawsuit. He was appointed and represented by the injured parties' attorneys who retained control of the litigation. He was responsible for none of the costs of the litigation. Lastly, the injured parties had full capacity to sue in their own right. The totality of these facts convinced the court that the transfer lacked any relevant substance, was created solely to affect diversity, and was therefore within the proscription of § 1359.

■ I reach a similar result in this case. Such a holding does not dispute the capacity of the plaintiff Dougherty to sue, nor impugn the validity of his appointment as guardian. The finding relates solely to the matter of federal diversity jurisdiction. After analysis of the situation in its entirety, I find that the sole motive for the appointment of Dougherty was to create diverse parties; that the sole unique quality recommending his appointment was his South Dakota citizenship; that the appointment affected no real transfer of title or interest; that Dougherty stands in no truly fiduciary relationship to his ward; that the litigation is solely controlled by

**640**

the minor's parents and their attorneys; and that parties exist, here the parents of Elaine, who are capable, appropriate, and generally preferred as guardians. See, M.S.A. 540.08. In essence, the single reason for Dougherty's appointment was wholly ulterior to the qualifications inherent in the guardianship concept.[2]

■■ Yet even if the facts were such that this particular guardianship had substance apart from its function of creating diversity, an adequate and independent ground exists for the finding that this court lacks jurisdiction. Without regard to the strictures of § 1359 the citizenship of the real party in interest controls in the matter of diversity jurisdiction. See, e. g., Mexican Central Ry. Co. v. Eckman, 187 U.S. 429, 23 S.Ct. 211, 47 L.Ed. 245 (1903); Loegering v. County of Todd, Minn., 185 F.Supp. 134 (D.Minn.1960), aff'd, 297 F.2d 470 (8th Cir. 1961); 3A Moore's Federal Practice ¶ 17.04. And the status of a party as a real party in interest is to be determined by state, here Minnesota, law. See, e. g., Dubuque Stone Products Co. v. Fred L. Gray Co., 356 F.2d 718 (8th Cir. 1965); 3A Moore's Federal Practice ¶ 17.07; 2 Barron & Holtzoff, Federal Practice and Procedure § 482.

■■ In Minnesota, the minor ward, and not the guardian, is the real party in interest. The case of Martineau v. City of St. Paul, 172 F.2d 777 (8th Cir. 1949) presented facts almost identical to our own. Judge Sanborn found that in Minnesota, the real party in interest is the minor ward, and that therefore the ward's citizenship determines the existence of diversity.

■■ In Minnesota, the ward is a real party in interest entitled to sue upon obligations owed him. Snicker v. Byers, 176 Minn. 541, 224 N.W. 152 (1929). In fact, it is typically demanded that in Minnesota actions the ward's name appear in the title of the cause. Dahlke v. Metropolitan Life Ins. Co., 218 Minn. 181, 15 N.W.2d 524 (1944); Rebne v. Rebne, 216 Minn. 379, 13 N.W.2d 18 (1944). In Minnesota, a guardian "has no title to or personal interest in his ward's property." Hoverson v. Hoverson, 216 Minn. 237, 12 N.W.2d 497, 500 (1943); he has "only a naked authority not coupled with an interest." 8B Dun. Dig. Guardian and Ward § 4107f. He is merely "an agent of the probate court * * *." Vadnais v. State, 224 Minn. 439, 28 N.W.2d 694 (1947). As —· suggested in *Martineau, supra,* the mere fact that the guardian is an agent, deriving his only authority from a Minnesota court, requires that his citizenship, if considered at all, be considered to be that of the appointing court's locale.

■■ It has long been the rule in this circuit that when the state law determines the ward to be the real party in interest, his citizenship must control for purposes of diversity. Stout v. Rigney, 107 F. 545 (8th Cir. 1901).

Thus two distinct and independently adequate grounds exist for the conclusion that the court lacks jurisdiction: (1) the making of Dougherty a party is improper within the sense of § 1359, Title 28 U.S.C.A., and (2) the real party in interest is Elaine Erickson, a Minnesota citizen, and there is therefore no diversity of citizenship between parties as required by § 1332, Title 28 U.S.C.A. The complaint is dismissed.

This expression is intended to comply with the requirements of Rule 52 of the Federal Rules of Civil Procedure.

2. While not vital to our determination, I note that plaintiff, in a memorandum brief, as much as admits that the true role of Dougherty is that of a guardian *ad litem,* and not a general guardian. And it is the general rule that where a guardian *ad litem* has been appointed, the infant's citizenship controls for purposes of diversity jurisdiction, without regard to further examination of the circumstances. 3A Moore's Federal Practice, ¶ 17.04; see e.g., Hernandez v. Lucas, 254 F.Supp. 901 (S.D.Tex.1967).