**Charles A. ROGERS, Conservator of the Estate of Frederick W. Pahlow, Appellant,**

**and**

**United States of America,**

**v.**

**Scott R. BATES, George Bates and Bernice Bates, Appellees.**

**No. 20085.**

United States Court of Appeals, Eighth Circuit.

Aug. 17, 1970.

Rehearing Denied and Rehearing En Banc Denied Sept. 14, 1970.

A. E. Radinsky, Denver, Colo., for appellant; Schrempp, Rosenthal, McLane & Bruckner, Omaha, Neb., on the brief.

Murl M. Maupin, Maupin, Dent, Kay, Satterfield & Gatz, North Platte, Neb., for appellees; C. J. Gatz, North Platte, Neb., on the brief.

Before MEHAFFY, GIBSON and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Plaintiff Charles A. Rogers of Denver, Colorado, as conservator for Frederick W. Pahlow, sought to recover damages in the Nebraska federal district court for bodily injuries which Pahlow sustained as a pedestrian when struck by an automobile on Christmas Eve, 1966, in Alliance, Nebraska. Pahlow resided in Alliance at the time of the accident. All defendants, the minor operating the vehicle at the time of the accident and his parents, also live in Nebraska. The district court, Judge Van Pelt, dismissed the action on jurisdictional grounds for want of diversity. Rogers appeals, urging that the trial court erred in finding that Pahlow permanently resided in the same state as the defendants and in determining, further, that Conservator Rogers' Colorado citizenship did not effect diversity. Finally, Rogers contends that the substantial interest held by the United States as a subrogee for medical expenses invokes federal jurisdiction and requires reinstatement of the action. We reject these contentions and affirm.

We briefly and chronologically review the pertinent facts. Alliance police investigating the accident arrested and jailed Pahlow for intoxication. While his injuries appeared minor at first, a few days after the accident Pahlow lapsed into a coma. He was then taken to the Veteran's Administration Hospital at Hot Springs, South Dakota, for diagnosis and treatment. Approximately one month later, Pahlow was transferred to the Veteran's Administration Hospital at Denver, Colorado, where he underwent brain surgery. Following surgery, Pah-

low, on March 10, 1967, engaged a Denver attorney to collect for the injuries Pahlow sustained in the accident. Pahlow signed a retainer agreement with the Denver attorney, listing his residence in Colorado. Thereafter, Pahlow was returned to the Hot Springs facility for recuperation. Medical records compiled by the Veteran's Administration at this time characterized Pahlow as "a little dull mentally", but competent.

On April 5, Pahlow brought action against the present defendants seeking damages for his automobile accident injuries in the United States District Court for the District of Nebraska. On April 14, the chief medical administrative services officer at the Hot Springs Veteran's Administration institution advised Denver counsel of a plan to discharge Pahlow and return him to Alliance, Nebraska, within about two weeks. Denver counsel, by letter, responded that such course of action would lead to a dismissal of Pahlow's federal court lawsuit. He requested that Pahlow travel to Denver "for consultation". Counsel and the Veteran's Administration personnel at Hot Springs arranged for Pahlow to fly to Denver for a three-day visit commencing May 9.

On May 10, Pahlow's attorney referred him to a Denver psychiatrist who diagnosed Pahlow as suffering from defective memory and impairment of perception due to chronic brain disease secondary to a sub-dural hemorrhage sustained in the accident. This physician recommended that Pahlow be evaluated by a "County Medical Commission" and that "a guardian [be] appointed for his person and property." Denver counsel immediately initiated action in the Denver County Probate Court, which culminated in its adjudication of Pahlow as a mentally ill person and its committing Pahlow to the care and custody of the Veteran's Administration Hospital at Fort Lyons, Colorado. Pahlow remained subject to this commitment until the next year, when on March 12, 1968, he was

transferred to the Hot Springs veterans' facility for "domiciliary care".[1]

Almost contemporaneously with proceedings leading to Pahlow's institutionalization in Colorado, Conservator Rogers, represented by Pahlow's Denver attorney, petitioned the Denver Probate Court to authorize him to act as conservator of Pahlow's estate and, as such, to continue Pahlow's federal court lawsuit. Armed with that court's authorization, Rogers filed an amended complaint. The Nebraska district court authorized this amendment as well as a second one adding the United States as a party plaintiff to determine its subrogation rights under 42 U.S.C. §§ 2651–2653. The United States then filed a claim as a pleading demanding reimbursement for medical costs incurred in providing care for Pahlow.

On March 3, 1969, the defendants moved to dismiss the complaint for want of diversity. On June 10, 1969, Judge Van Pelt dismissed the claim. The United States, as a party plaintiff, has not appealed.

■ We first consider whether Pahlow, through a combination of intention and action, established a domicile of choice in Colorado. This court has explained:

> To acquire a domicil of choice, the law requires the physical presence of a person at the place of the domicil claimed, coupled with the intention of making it his present home. When these two facts concur, the change in domicil is instantaneous. Intention to live permanently at the claimed domicil is not required. If a person capable of making his choice honestly regards a place as his present home, the motive prompting him is immaterial. Janzen v. Goos, 302 F.2d 421, 425 (8th Cir. 1962); quoting with approv-

al from Spurgeon v. Mission State Bank, 151 F.2d 702, 705–706 (8th Cir. 1945), cert. denied, 327 U.S. 782, 66 S.Ct. 682, 90 L.Ed. 1009 (1946).

Prior to and at the time of the accident, Pahlow permanently resided in Alliance. Five days after Pahlow filed his initial complaint, he told Veteran's Administration personnel at Hot Springs that he wanted to return home to Alliance. When the Denver Probate Court referred him to the Veteran's Hospital at Fort Lyons, Colorado, for custody and care, Pahlow listed his permanent home as Alliance. In view of these specific facts and in light of the record as a whole, the self-serving and conclusional statement contained in Pahlow's retainer agreement with his Denver attorney that "[c]lient states that he is a resident and citizen of the State of Colorado" *pales into insignificance.*[2] A determination of citizenship for purposes of diversity is a mixed question of law and fact, but mainly fact, which may not be set aside by an appellate court unless clearly erroneous. See Russell v. New Amsterdam Casualty Company, 325 F.2d 996 (8th Cir. 1964); *Janzen, supra,* 302 F.2d 421. The appellant fails to demonstrate that the trial court clearly erred in holding that Pahlow had acquired no citizenship in Colorado and that he remained domiciled in and a citizen of Nebraska at all times material to this litigation.

■ We next turn to appellant's contention that Conservator Rogers' Colorado citizenship requires reversal. The trial court expressly found that Pahlow's Denver counsel "manufactured" federal jurisdiction by initiating, controlling and directing Pahlow's trip to Denver in May, 1967; and by causing Rogers, characterized by the trial court as a "straw man", to be named as conservator subject to counsel's direction. In rejecting

---

1. "Domiciliary care" describes a type of medical care and treatment available to eligible veterans. Generally, this term encompasses care and quartering of veterans suffering permanent disabilities, but who possess sufficient physical and mental ability to assist in some degree in taking care of themselves. See 28 C.F.R. § 17.47 (c) (3) (1970).

2. Language of Judge Matthes in Russell v. New Amsterdam Casualty Company, 325 F.2d 996, 999 (8th Cir. 1964).

Rogers' citizenship as a controlling element creating diversity, the trial court relied upon the following mandate of 28 U.S.C. § 1359:

> A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

We examine this ruling. This court has previously held that the appointment of an administrator of a decedent's estate or statutory trustee with an eye to establishing diversity of citizenship to permit the bringing of an action for wrongful death in federal district court does not fall within the ambit of § 1359. *Janzen, supra,* 302 F.2d 421; County of Todd, Minnesota v. Loegering, 297 F.2d 470 (8th Cir. 1961); McCoy v. Blakely, 217 F.2d 227 (8th Cir. 1954).

In *Janzen, supra,* Judge Blackmun, writing for the court, said:

> When an action is brought by an administrator or other fiduciary and the governing state law authorizes that fiduciary to bring suit in his own name as the real party in interest, it is the fiduciary's personal citizenship, not the identity of the statement from which he receives his appointment or the citizenship of the persons for whose benefit the action is brought, which is pertinent in the ascertainment of the existence of diversity. * * * This court has so held on a number of occasions. * * * No question is here raised as to the plaintiff, in her capacity as administratrix, being the real party in interest and the provisions of R.R.S. Nebraska, 1943, § 25–304, confirm this. In any event, the citizenship of all the beneficiaries coincides with that of the plaintiff. (Citations omitted.) 302 F.2d at 425.

In *McCoy, supra,* Judge Vogel noted that motive for the appointment of an administrator to create diversity "without more" established no violation of § 1359.

Appellant relies particularly upon the *County of Todd, supra,* holding that the substitution of a Montana citizen for a Minnesota trustee of decedent's heirs in order to obtain diversity jurisdiction in a wrongful death action against a Minnesota defendant was not collusive or improper. The opinion noted that the changing from a resident to a non-resident representative represents "usual expedients employed by counsel and client in matters of this kind." 297 F.2d at 474.

In Martineau v. City of St. Paul, 172 F.2d 777 (8th Cir. 1949), this court rejected a guardian's citizenship as a basis for federal jurisdiction, reasoning that under controlling state law, the infant and not his guardian was the real party in interest. Although not discussing § 1359 or its predecessor, 28 U.S.C. § 80,[3] Judge Sanborn commented for the panel of this court:

> Even if this controversy were to be regarded as one between the guardian and the defendants, we would still be of the opinion that diversity of citizenship was lacking, since the guardian is a mere agent of the Probate Court of Ramsey County, Minnesota, appointed for the purpose of enforcing a claim of a ward of that court against citizens of Minnesota. We think that a Probate Court of Minnesota, by appointing a nonresident as a guardian for a Minnesota minor, cannot transmute what is purely a local controversy into one between citizens of different states, or confer jurisdiction of the controversy upon the United States District Court for the District of Minnesota. 172 F. 2d at 780.

Rogers, as a conservator, occupies a substantially different status from administrators or trustees of decedents' estates. The latter undertake perform-

---

3. Relationship of statutes explained in Jaffe v. Philadelphia & Western R. Co., 180 F.2d 1010, 1011 (3d Cir. 1950).

ance of duties specified by law.[4] These responsibilities are similar to those assumed by a trustee of an active trust whose citizenship we have held to be controlling for purposes of federal diversity jurisdiction in Curb and Gutter Dist. No. 37 v. Parrish, 110 F.2d 902 (8th Cir. 1940), and Mathis v. Hemingway, 24 F.2d 951 (8th Cir. 1928). In addition, death itself creates a necessity for someone to represent the decedent's estate or his survivors.

A conservator, on the other hand, functions much like a guardian of a minor or an incompetent. See Whitmarsh v. McGair, 90 R.I. 154, 156 A.2d 83, 87 (1959). The beneficiaries, through a guardian ad litem or a next friend, possess the power to sue in their own names. See, e. g., Fed.R.Civ.P. 17(c), cf. Neb.Rev.Stat. § 25–307 (1964). Presumably, Pahlow, as one adjudicated mentally ill, continues to possess the power to sue in his own name.

The records in the probate proceedings disclose no purpose for Rogers' appointment as a conservator other than the continuance of the lawsuit in the federal district court. Colorado law entitled the conservator to exercise control only over property within the state.[5] Pahlow owned no such property. The Probate Court ordered the Veteran's Administration to exercise custody of Pahlow's person. It thrust no affirmative duties in that regard upon Rogers. At best, Conservator Rogers assumed a naked and dry trust free from responsibility or obligation to the beneficiary, except to attempt to create diversity of parties in the pending federal court action.

In *Janzen, supra,* 302 F.2d 421, decedent's widow, and in *County of Todd,* supra, 297 F.2d 470, decedent's daughter, each as a plaintiff serving in a representative capacity, possessed a substantial personal stake in the wrongful death claim. In *McCoy, supra,* 217 F.2d 227, plaintiff, an Iowa administrator, exercised supervision over an Iowa decedent's estate. Rogers, however, possesses no such interest. The record discloses him as an acquaintance who met Pahlow casually at the Denver Veteran's Administration Hospital.

The legal procedures resulting in Rogers' appointment as a conservator for the purpose of creating diversity jurisdiction seem analogous to the procedure by which a creditor domiciled in his debtor's state assigns his claim to an assignee in another state for the sole purpose of creating federal jurisdiction. Such an assignment falls within the ban of § 1359. The Supreme Court, in Kramer v. Caribbean Mills, 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969), observed:

> If federal jurisdiction could be created by assignments of this kind, which are easy to arrange and involve few disadvantages for the assignor, then a vast quantity of ordinary contract and tort litigation could be channeled into the federal courts at the will of one of the parties. Such "manufacturer of Federal jurisdiction" was the very thing which Congress intended to prevent when it enacted § 1359 and its predecessors. 394 U.S. at 829, 89 S.Ct. at 1490.

The Court, in *Caribbean Mills, supra,* considered assignments as a means of invoking federal diversity jurisdiction, not the appointment of guardians or admin-

---

4. In *Janzen, supra,* 302 F.2d 421, and *McCoy, supra,* 217 F.2d 227, each administrator brought action under Nebraska law for wrongful death. Nebraska statutes specifically mandate that only the personal representative may maintain such an action and that he must do so in his own name, for the benefit of the surviving heirs of the decedent. See Neb. Rev.Stat. §§ 30–809, –810 (1964). The responsibilities cast upon the plaintiff trustee in *County of Todd, supra,* 297 F.2d 470, rest upon similar statutory pro-

visions. See Minn.Stat.Ann. §§ 573.01–.02 (1947).

5. The pertinent provision of the Colorado Code reads:

The appointment of a conservator of a non-resident of Colorado shall not be construed to give such conservator any right to the control of the person of a mentally ill or mentally deficient person, nor of any portion of his estate not in the state of Colorado. * * * Colo. Rev.Stat. § 153–9–6 (1963).

istrators to do so.[6] In McSparran v. Weist, 402 F.2d 867 (1968) (en banc), cert. denied, Fritzinger v. Weist, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969), however, the Third Circuit applied the policy of § 1359 to deny a guardian residing in a state different from his ward the privilege of prosecuting an action on behalf of the ward in the federal court. The majority stated:

> The appointment of a fictitious guardian or representative selected by counsel for no other purpose than to create diversity jurisdiction in the action which will constitute the only asset in the estate is not substantially different from an assignment to an agent for the purpose of instituting litigation. 402 F.2d at 874.

See also the companion case, Esposito v. Emery, 402 F.2d 878 (3d Cir. 1968) (en banc).

The Fourth Circuit applied a similar ban under the policy of § 1359, prospectively only, to a non-resident appointed as an administrator of a decedent's estate for the sole purpose of effecting diversity jurisdiction in an action for wrongful death under circumstances in which the administrator possessed "no stake in the litigation." Lester v. McFaddon, 415 F.2d 1101 (1969). In Dougherty v. Oberg, 297 F.Supp. 635 (D.Minn.1969), Judge Devitt applied the rationale of McSparran, supra, 402 F.2d 867, and Esposito, supra, 402 F.2d 878, in denying a South Dakota guardian of an injured Minnesota infant access to the federal district court in order to sue Minnesota defendants on the infant's claim for injuries. Cf. Duffy v. Currier, 291 F.Supp. 810 (D.Minn.1968) (jurisdiction sustained in wrongful death action, opinion of Judge Neville).

Our disposition of this litigation is controlled by the holding, though not necessarily the full rationale, of *Martineau, supra*, 172 F.2d 777. We hold the appointment of a representative of a living person, such as a guardian or conservator who undertakes no duties nor obligations to his ward or beneficiary save those incident to the institution of a lawsuit, falls within the proscription of § 1359 and is insufficient to invoke federal jurisdiction on the basis of diversity of citizenship. In such cases, we look to the citizenship of the ward or beneficiary.

We decline to consider appellant's contention that a subrogation interest on the part of the government saves federal jurisdiction of Rogers' action pursuant to 28 U.S.C. § 1345, which confers original jurisdiction upon the federal district courts of all civil actions, suits or proceedings commenced by the United States. Appellant has not presented this contention to the district court. We note that Judge Van Pelt's dismissal does not expressly encompass the government's separate amended claim which prayed for judgment against the defendants in an amount sufficient to reimburse the Veteran's Administration for the cost of hospital, medical and surgical treatment fur-

---

6. Footnote 9 of the opinion recites in part: "Nor is it necessary to consider whether, in cases in which suit is required to be brought by an administrator or guardian, a motive to create diversity jurisdiction renders the appointment of an out-of-state representative 'improper' or 'collusive.' See, e. g., McSparran v. Weist, 402 F.2d 867 (1968) ; Lang v. Elm City Constr. Co., 324 F.2d 235 (1963) ; County of Todd v. Loegering, 297 F.2d 470 (1961) ; cf. Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931). Cases involving representatives vary in several respects from those in which jurisdiction is based on assignments: (1) in the former situation, some representative must be appointed before suit can be brought, while in the latter the assignor normally is himself capable of suing in state court; (2) under state law, different kinds of guardians and administrators may possess discrete sorts of powers; and (3) all such representatives owe their appointment to the decree of a state court, rather than solely to an action of the parties. It is not necessary to decide whether these distinctions amount to a difference for purposes of § 1359." 394 U.S. at 828, 89 S.Ct. at 1490.

nished Pahlow. The United States has not here appealed. Under these circumstances, appellant's § 1345 contention places nothing before us for review.

We affirm the dismissal.[7]

7. Appellant's objection to the printing of the supplemental appendix is well taken. Costs are disallowed to appellee for print-ing seventy pages of the supplemental appendix.