744 F.2d 53
 53 USLW 2172, 40 Fed.R.Serv.2d 46
 Ronald BETTIN and Joyce Bettin, Co-Administrators of the
Estate of Ronald Franklin Bettin, Deceased, Appellants,
v.
Morris NELSON and Luverne Nelson, Appellees.
Ronald BETTIN and Joyce Bettin, Co-Administrators of the
Estate of Ronald Franklin Bettin, Deceased, Appellants,
v.
MORRIS NELSON FARM'S, INC., Appellee.
 No. 84-1133.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 18, 1984.
Decided Sept. 18, 1984.
 
 Steven M. Johnson, Brady, Kabeiseman, Reade, Abbott & Johnson, Yankton, S.D., Craig K. Thompson, James A. Johnson Law Offices, Vermillion, S.D., for appellants.
 Michael J. Schaffer, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S.D., for appellees.
 Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and FAGG, Circuit Judge.
 LAY, Chief Judge.
 
 
 1
 This appeal arises out of a wrongful death action brought by Ronald and Joyce Bettin, as co-administrators of the estate of Ronald Franklin Bettin against Luverne and Morris Nelson and Morris Nelson Farm's, Inc. On a motion for summary judgment, the trial court, the Honorable John B. Jones presiding, found that the defendants' mere ownership of allegedly defective equipment was insufficient to create liability for decedent's death. The trial court dismissed the suit against each of the defendants.[1] On appeal, the Bettins contend that the trial court was incorrect in its assessment of the basis for defendants' liability under South Dakota law. On cross appeal, the defendants argue that this court has no jurisdiction to hear this case because diversity jurisdiction was improperly asserted by the plaintiffs.
 
 Facts
 
 2
 On February 27, 1980, Ronald Franklin Bettin, a citizen of South Dakota, was killed as a result of becoming entangled in the power take-off shaft (PTO) of a piece of farm machinery. The machinery was in the possession of decedent's employer, Floyd S. Nelson of Yankton, South Dakota. On November 22, 1982, decedent's parents, Iowa citizens, were appointed as co-administrators of his estate in Sac County, Iowa. Suits were filed in the federal district court of South Dakota against Floyd Nelson, Morris Nelson and Luverne Nelson, brothers of Floyd, and Morris Nelson Farm's, Inc., by the co-administrators, alleging diversity of citizenship pursuant to 28 U.S.C. Sec. 1332 (1982).
 
 
 3
 Decedent's fiancee, Mary Southrada, was pregnant at the time of decedent's death and gave birth to his child on August 29, 1980. On February 22, 1983, Southrada, then a South Dakota citizen, was appointed as special administrator of the estate in South Dakota. On February 23, 1983, Southrada brought an action against Clay Equipment Corporation, an Iowa corporation and the manufacturer of a portion of the farm machinery involved in the accident. The jurisdictional basis of this suit was also 28 U.S.C. Sec. 1332 (1982). All cases were consolidated in the federal district court for the District of South Dakota.[2]
 
 Jurisdiction
 
 4
 Morris Nelson and Morris Nelson Farm's, Inc. contend that diversity jurisdiction was manufactured by the Bettins in violation of 28 U.S.C. Sec. 1359 (1982).[3] Defendants claim that the Bettins have no stake in the litigation and no interest in the estate. Thus, defendants argue, the Bettins' sole reason for being appointed administrators of the decedent's estate was to create diversity among the parties and invoke federal jurisdiction. The Bettins assert that because they paid the expenses of the funeral of the decedent and have additional duties as co-administrators of the estate, they have a stake in the litigation.
 
 
 5
 The district court found that the appointment of the Bettins was originally made solely to establish federal diversity jurisdiction. The court also found, however, that the Bettins had an interest in the litigation to the extent of the burial expenses they had incurred. Thus, the court concluded that the Bettins had a sufficient stake in the litigation to render their appointment non-collusive under section 1359.
 
 
 6
 The issue of collusion in the manufacture of federal diversity jurisdiction has significantly evolved in the past twenty years. Prior to 1968, courts regularly held that appointments of executors or administrators of a defendant's estate which were valid under the applicable state law were not "improperly or collusively" made even if motivated only by jurisdictional concerns. See, e.g., Lang v. Elm City Construction Co., 324 F.2d 235 (2d Cir.1963); Corabi v. Auto Racing, Inc., 264 F.2d 784 (3d Cir.1959). This was the rule of the Eighth Circuit also. See, e.g., Janzen v. Goos, 302 F.2d 421 (8th Cir.1962); County of Todd, Minn., v. Loegering, 297 F.2d 470 (8th Cir.1961). It is generally recognized that absent collusive or improper appointment under section 1359, the citizenship of the appointed representative, rather than that of the decedent, controls the determination of diversity of citizenship for jurisdictional purposes. See, e.g., O'Brien v. Stover, 443 F.2d 1013, 1016 (8th Cir.1971) (citing Janzen v. Goos, 302 F.2d 421 (8th Cir.1962)); Hackney v. Newman Memorial Hospital Inc., 621 F.2d 1069 (10th Cir.1980).
 
 
 7
 In McSparran v. Weist, 402 F.2d 867 (3d Cir.1968), the Third Circuit was presented with an out-of-state guardian appointed to prosecute a suit for an injured minor. The parties conceded that the sole reason for the appointment of the out-of-state guardian was to create diversity jurisdiction. Although the appointment was authorized under state law, the Third Circuit interpreted section 1359 as stating that "a nominal party designated simply for the purpose of creating diversity of citizenship, who has no real or substantial interest in the dispute or controversy, is improperly or collusively named." Id. at 873. Thus, the Third Circuit held that the citizenship of the out-of-state guardian would not be controlling with respect to a determination of diversity among the parties. Subsequent to McSparran, "lower court cases have held with one voice ... that if the purpose of appointing an out-of-state representative is to create diversity Sec. 1359 bars federal jurisdiction." Wright, Law of Federal Courts 168 (4th ed. 1983) (footnote omitted).[4]
 
 
 8
 This circuit has not recently had the opportunity to interpret section 1359 in a McSparran-type case. The old rule stated in Janzen v. Goos, 302 F.2d 421 (8th Cir.1962), was that a case did not come within the ambit of section 1359 merely because the appointment of the administrator was made with an eye to establishing diversity of citizenship. In Rogers v. Bates, 431 F.2d 16 (8th Cir.1970), the court discussed the trend begun in McSparran toward a broader interpretation of section 1359. In Rogers, we held that "the appointment of a representative of a living person ... who undertakes no duties nor obligations to his [or her] ward or beneficiary save those incident to the institution of a lawsuit, falls within the proscription of Sec. 1359 and is insufficient to invoke federal jurisdiction on the basis of diversity of citizenship." Id. at 21.
 
 
 9
 The next opportunity this court had to interpret section 1359 was in O'Brien v. Stover, 443 F.2d 1013 (8th Cir.1971). The administrator of the decedent's estate in O'Brien was the daughter of the decedent. In response to the defendant's challenge to the jurisdiction of the federal court, we held that because the administrator was the decedent's daughter and sole heir and was a natural and logical choice to administer the estate, the appointment was not collusive and the citizenship of the administrator would control for diversity purposes. See id. at 1016.
 
 
 10
 The most recent application of section 1359 in this circuit involved a trustee suing in a representative capacity. In Bartnick v. Reader Co., Inc., 487 F.2d 1021 (8th Cir.1973), the trustee represented a widow and the decedent's next of kin. This court held that under these circumstances "an appointment solely to create diversity jurisdiction will not be recognized by federal courts." Id. at 1022. The court summarily affirmed the dismissal of the action by the district court.
 
 
 11
 The instant case is different factually from any of the cited authority. In McSparran, the mother of the injured minor was still living and capable of prosecuting the suit herself. The court found controlling in such a case that the out-of-state administrator had no substantial interest in the dispute or controversy. Similarly, the representatives in Rogers and Bartnick were appointed to represent living persons and had no responsibilities toward their fiduciaries other than the maintenance of the lawsuits. In O'Brien, the court was presented with a situation which resembles more closely the instant case. In O'Brien, the representative was the daughter of the decedent and her appointment was "natural and logical" in light of the circumstances. Unlike the instant case, however, the representative in O'Brien was also the decedent's sole heir and was a real party in interest to the underlying suit.
 
 
 12
 We hold that the parents of the decedent, although not the beneficiaries of the court actions, are interested persons entitled to have their appointments respected in determining diversity jurisdiction. We find the instant case more analogous to O'Brien than to the line of cases represented by McSparran. We also note that the parents have a claim against any future assets of the decedent's estate, including any recovery in the wrongful death actions, for the burial expenses they advanced. While this fact standing alone could not render a party "interested", we find that the Bettins' financial claim against the estate coupled with their parental relationship to the decedent compels the conclusion that their appointment was not collusive and in violation of section 1359. We therefore uphold the district court's conclusion that the citizenship of the Bettins controls the question of diversity.[5]Summary Judgment
 
 
 13
 The Bettins appeal the district court's finding that Morris Nelson and Morris Nelson Farm's, Inc., were sued solely as a result of their ownership of the farm implements involved in this action. The court found that the defendants had not engaged in any maintenance of the equipment, nor were they connected to the removal of the shields from the equipment.
 
 
 14
 Summary judgment may be granted if the pleadings, affidavits, and other filed documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is axiomatic that the court should review all facts in the light most favorable to the party opposing summary judgment and give the non-moving party the benefit of all favorable inferences drawn from the pleadings and affidavits. St. Louis County Bank v. United States, 674 F.2d 1207, 1209 (8th Cir.1982).
 
 
 15
 Based on the depositions and pleadings filed, it appears that the plaintiffs' theory is that Morris Nelson and Morris Nelson Farm's, Inc., as partial owners of the equipment, had a duty to keep the machinery defect-free. Plaintiffs point to the lack of warning labels on the machinery and the knowledge of Morris Nelson that the machinery was being run at a two-fold greater speed than intended by the manufacturer as demonstrating defects in the machinery and knowledge by the owners of those defects. We agree with the district court, however, that partial ownership of the equipment is an insufficient basis upon which to impose liability on Morris Nelson and Morris Nelson Farm's, Inc. Generally, mere ownership will not render an owner liable unless the owner has control over the object or benefits from the intended use of the object.[6] Morris Nelson and Morris Nelson Farm's, Inc. do not fall in the category of owners subject to liability merely because they are owners.[7] We thus affirm the grant of summary judgment in favor of Morris Nelson Farm's, Inc., and Morris Nelson individually.[8]
 
 Discovery
 
 16
 The Bettins next argue that the trial court erred in failing to allow them to supplement the record prior to the decision on the motion for summary judgment.[9] We question whether the Bettins actually requested the court to allow supplemental discovery. It is undisputed that no affidavits were filed on this issue. The Bettins rely on the following statements of their counsel as evincing a request for further discovery:
 
 
 17
 In substance, as to both Luverne and Morris Nelson and the corporation, while they're all sued based on ownership and negligence related thereto, the evidence in the depositions, the photographs, the Answers to Interrogatories, reveals that there are material issues of fact in issue for the jury to decide in this case. The Rule 56 itself indicates that the Court can, if a motion is made prematurely, allow the nonmoving party to supplement the record, I believe, by other evidence. Because the Motion to Dismiss has been the thing that I guess has taken everybody's attention the last couple of months, there haven't been any reasons to schedule expert depositions or anything else. Those have all been put in the background because of the pending Motion to Dismiss, and therefore, if the Court has any question at all about whether this motion or motions should be granted, we would seek leave of Court to take those depositions to supplement the record in accordance with Rule 56. While we don't feel that that's necessary with the record, if there is any question about it, we would request the leave of Court for that purpose.
 
 
 18
 Transcript of Hearing on Motions Held on December 22, 1983, at 50-51.
 
 
 19
 Even if we were to construe these remarks as a request to the court for further discovery, the Bettins did not present the trial court with any evidence of what further discovery could produce. In light of this, it was within the trial court's discretion to rule on the motion for summary judgment without further discovery.
 
 Conclusion
 
 20
 We affirm the judgment of the district court. Each party to pay its own costs.
 
 
 
 [1]
 A third defendant, Luverne Nelson, was also granted summary judgment and was dismissed from the lawsuit. The Bettins do not appeal from this judgment
 
 
 [2]
 Not involved in this appeal and still pending in the district court are the suits by Ronald and Joyce Bettin against Floyd Nelson and the suit by Mary Southrada against Clay Equipment
 
 
 [3]
 Section 1359 states: "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."
 
 
 [4]
 The United States Supreme Court has never interpreted section 1359 in a case involving an administrator or guardian. See Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 828 n. 9, 89 S.Ct. 1487, 1490 n. 9, 23 L.Ed.2d 9 (1969)
 
 
 [5]
 The defendants also argue that, even if this court finds that the Bettins have a substantial stake in the litigation allowing their appointment to be respected for diversity purposes, the dollar amount of the claim they have against the decedent's estate for funeral expenses does not meet the $10,000 amount in controversy requirement for diversity jurisdiction. See 28 U.S.C. Sec. 1332 (1982). The defendants confuse two different "stake" requirements. One requires the representatives to have a sufficient stake in the handling of the decedent's estate to render their appointment non-collusive. This requirement does not have a dollar minimum and, theoretically, could be satisfied by a non-monetary interest in the estate. The dollar amount required in diversity actions relates only to the plaintiff's claim in the underlying lawsuit. In the instant case, each of the suits against the defendants demand in excess of $500,000 in damages, clearly satisfying the amount in controversy requirement
 
 
 [6]
 Defendants neither had possession of the machinery nor derived any benefit from the decedent's use of the equipment. See Bacheller v. Employers Mutual Liability Insurance Co., 93 Wis.2d 564, 287 N.W.2d 817 (holding that more than mere ownership of an automobile is necessary to impose liability), modified on other grounds, 93 Wis.2d 564, 290 N.W.2d 872 (1980); Blackford v. Sioux City Dressed Pork, Inc., 254 Iowa 845, 118 N.W.2d 559 (1962) (assuming that a plant owner could be found negligent in failing to equip machinery with safety guards and warning stickers); Flanagan v. Slattery, 74 S.D. 92, 49 N.W.2d 27, 32 (1951) (imputing negligence of a wife using machinery "in the prosecution of her husband's business" to the owner-husband); cf., W. Prosser, Handbook of the Law of Torts 677 (4th ed. 1971) ("[A]ny person furnishing a chattel for a use in which he has a business interest may be liable for his negligence to anyone who may reasonably be expected to be in the vicinity of its probable use.") (footnote omitted)
 
 
 [7]
 Even if defendants could be held liable based solely on ownership, the plaintiffs have presented no evidence to show that Morris Nelson's transfer in 1979 of the equipment involved in the instant case to Morris Nelson Farm's, Inc. was not a bona fide transaction. They also have presented no persuasive evidence that Morris Nelson Farm's, Inc. is a sham corporation or merely the alter ego of Morris Nelson. We would thus have no basis upon which to pierce the corporate veil and expose Morris Nelson personally to liability
 
 
 [8]
 Plaintiffs argue that ownership is analogous to a bailment relationship in which the bailor has a duty to exercise reasonable care to make the thing bailed safe for the use for which it was bailed. See Starnes v. Stofferahn, 83 S.D. 424, 160 N.W.2d 421 (1968). We question whether an object jointly owned may correctly be described as "bailed" from the non-possessing owner to the possessing owner. See 8 Am.Jur.2d Bailments Sec. 27 (1980) ("[I]t is a generally recognized feature of bailments that possession of the thing bailed is severed from ownership; the bailor retains general ownership, while the bailee has lawful possession or custody for the specific purpose of the bailment.") (footnote omitted); see also Nyhus v. Travel Management Corp., 466 F.2d 440, 444 (D.C.Cir.1972) ("A sine qua non of bailment is possession by one of the personal property of another * * *.") (footnote omitted)
 
 
 [9]
 The Bettins rely on Fed.R.Civ.P. 56(f) which states: "Should it appear from the affidavits of a party opposing the motion that he [or she] cannot for reasons stated present by affidavit facts essential to justify his [or her] opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."