NATIONAL EXCHANGE BANK OF FOND DU LAC, Appellant, v. MANN, Respondent: KILBOURN AMERICAN LEASING, INC., Defendant.

*No. 75-782. Submitted on briefs November 2, 1977.—*
*Decided January 3, 1978.*
(Also reported in 260 N.W.2d 716.)

---

354

For the appellant the cause was submitted on the brief of *Louis J. Andrew, Jr.,* and *Andrew & Petak, S. C.* of Fond du Lac.

For the respondent the cause was submitted on the brief of *Gerald M. Jung* of Wauwatosa.

HANLEY, J. The sole issue on this appeal is whether a transaction between National and Kilbourn gave a security interest in a motor vehicle which it could assert against the defendant, Donald L. Mann, who had previously bought and taken possession of the vehicle but had not secured a title certificate.

The appellant contends that the purported acquisition of title by the defendant cannot be valid because there was no compliance with the provisions of sec. 342.15(3), Stats.

Sec. 342.15, Stats., provides in pertinent part:

"Transfer of interest in a vehicle. (1) If an owner transfers his interest in a vehicle, other than by the creation of a security interest, he shall at the time of the delivery of the vehicle, execute an assignment and warranty of title to the transferee in the space provided therefor on the certificate, and cause the certificate to be mailed or delivered to the transferee, except that if the vehicle being transferred has been junked, he shall return the certificate to the division in accordance with s. 342.34.

"(2) Except as provided in s. 342.16, the transferee shall, promptly after delivery to him of the vehicle, execute the application for a new certificate of title in the space provided therefor on the certificate or as the division prescribes, and cause the certificate and application to be mailed or delivered to the division.

"(3) Except as provided in s. 342.16 and as between the parties, a transfer by an owner is not effective until the provisions of this section have been complied with. An owner who has delivered possession of the vehicle to

the transferee and has complied with the provisions of this section requiring action by him is not liable as owner for any damages thereafter resulting from operation of the vehicle."

The above section is part of the Wisconsin Title and Anti-Theft Law, ch. 342, Stats., which was taken almost in whole from the Uniform Motor Vehicle Certificate of Title and Anti-Theft Act. 11 *Uniform Laws Annotated*, §1 et seq. (1974).

The Uniform Act and the Wisconsin codification place great emphasis on certificates of title as evidence of ownership and of the existence of encumbrances. Indeed, with respect to the latter, the provisions of the Act and of the statute dealing with the perfection of security interests supersede, under some circumstances, provisions generally applicable to the perfection of such interests in goods. Sec. 409.302(3) of the Wisconsin Commercial Code provides that compliance with its filing provisions is not necessary or effective to perfect a security interest in property subject to the security interest provisions of the vehicle title statute. *See*, secs. 342.19 and 342.20, Stats. This method of perfecting a security interest in vehicles subject to the vehicle registration statutes is exclusive. Sec. 342.24, Stats.

■
Nevertheless, even though the perfection of a security interest in a motor vehicle may be governed by the provisions of the title statutes, the creation of the security interest is governed by the Commercial Code. 1 G. Gilmore, *Security Interests in Personal Property*, §20.5 at 566 (1965). The vehicle title law incorporates for the purposes of its provisions the definitions given the terms "secured party," "security agreement" and "security interest" by the Commercial Code. Sec. 340.01 (56m)–(56o), Stats. Presumably, then, to perfect a security interest under the vehicle title law, it must be created in accordance with the Commercial Code.

The essential requirements of an enforceable security interest in goods not in the possession of the creditor was, at the time the instant security agreement was created, set forth in sec. 409.203(1), Stats. (1973):

"Attachment and enforceability of security interest; proceeds; formal requisites. (1) Subject to s. 404.208 on the security interest of a collecting bank and s. 409.113 on a security interest arising under ch. 402, a security interest *is not enforceable against the debtor or 3rd parties with respect to the collateral and does not attach unless:*

"(a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned; and

"(b) Value has been given; and

"(c) *The debtor has rights in the collateral.*" (Emphasis supplied).

The requirements that the debtor sign a security agreement describing the collateral, that the creditor give value and that the debtor have rights in the collateral must all exist to give rise to an enforceable security agreement. 69 Am. Jur. 2d *Secured Transactions,* sec. 332 at 167 (1973) ; R. Henson, *Secured Transactions Under the Uniform Commercial Code.* §4–2, (1973).

What rights did Kilbourn have in the automobile "sold" to Mann? Under sec. 402.401(2), Stats., Kilbourn had no rights in the vehicle. This section provides:

"(2) Unless otherwise explicitly agreed *title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods,* despite any reservation of a security interest and *even though a document of title is to be delivered at a different time or place*; and in particular

and despite any reservation of a security interest by the bill of lading:

"(a) If the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but

"(b) If the contract requires delivery at destination title passes on tender there." (Emphasis supplied.)

Automobile certificates of title have not generally been accorded the legal status of documents of title as that term is used in the Uniform Commercial Code because vehicle certification statutes based upon the Uniform Act do not recognize a pledge of the certificate as effective to perfect an interest. 1 G. Gilmore, *Security Interests in Personal Property*, §20.5 at 566 (1965); sec. 401.201 (15), Stats. The Wisconsin vehicle certification statutes conform to this doctrine. *See*, sec. 342.19–20, Stats. Therefore, unless otherwise agreed or otherwise required by law, title to the property which is the subject of a sale within the scope of the Commercial Code passes to the buyer at the time physical possession is transferred.

Although this court has never addressed the issue of whether sec. 342.15(3) prevents passage of title to an automobile until a new certificate is obtained, it has, in dicta, indicated that an interest in an automobile may be transferred before the transmittal of the certificate. *Mulvaney v. Tri State Truck & Auto Body, Inc.*, 70 Wis.2d 760, 765, 235 N.W.2d 460 (1975). More to the point is the case of *Stroman v. Orlando Bank & Trust Co.*, 239 So.2d 621 (Fla. Dist. Ct. App., 1970). The facts of that case are essentially identical to our situation here: Stroman purchased a used automobile from a third party, paying the purchase price in full and taking possession the same day. He did not, however, receive a title certificate. This third party, instead of obtaining a new certificate for Stroman, used the old certificate to obtain a loan

from the bank. In seeking to gain possession of the automobile, the bank relied upon Fla. Stats. §319.22(1), which provided that the purchaser of a motor vehicle could not acquire a marketable title until a new certificate of title had been obtained, and which directed courts not to recognize the rights and interests of the purchaser in that vehicle unless evidenced by the certificate. The Florida state district court of appeals, reversing the trial court, concluded that the statute did not prevent the passage of title to a purchaser when he has received possession of the automobile and in good faith relies upon the dealer to secure a title certificate in his name.

National takes the position that Kilbourn, by retaining the certificate of title to the automobile admittedly conveyed to Mann for value, reserved rights in the collateral which could be encumbered.

The effect of the certificate of title is stated in sec. 342.10(5), Stats.: "A certificate of title issued by the division is prima facie evidence of the facts appearing on it." By using the term "prima facie evidence," the legislature did not intend the certificate to constitute conclusive evidence of ownership. It is evidence that the person named as owner of the vehicle obtained that status in a legal manner and, under normal circumstances it provides a convenient means of proving such status to potential purchasers and creditors. Thus, the purpose of the act "to furnish convenient *evidence* of vehicle ownership" is achieved. 11 *Uniform Law Annotated,* Commissioner's Prefatory Note at 421 (1974).

National makes a persuasive argument that insofar as motor vehicles subject to the certificate of title statutes are concerned, sec. 342.15(3), Stats., supersedes those provisions of the Uniform Commercial Code dealing with the passage of interests in goods. Both the vehicle certificate of title law and the Wisconsin Commercial Code deal with transfers of interest in goods and the per-

fection of enforceable security interests. Statutes dealing with the same subject as the one being construed are commonly referred to as statutes in pari materia which, as with other forms of extrinsic aids, should be resorted to only if the statute being examined is ambiguous. 2A Southerland, *Statutory Construction*, §51.01 at 287 (4th ed. 1973). Statutes on the same subject should be construed together:

> "Statutes in pari materia, although in apparent conflict, are so far as reasonably possible construed to be in harmony with each other. But if there is an irreconcilable conflict between the new provision and the prior statutes relating to the same subject matter, the new provision will control as it is the later expression of the legislature." 2A Sutherland, *Statutory Construction*, sec. 51.02 at 290 (4th ed. 1973).

Consequently, the history of these various provisions is important. Sec. 342.15(3), Stats., was enacted by 1965 Wis. Laws, ch. 485, sec. 9, to be effective June 1, 1966. The Wisconsin Commercial Code, including the provision (then contained in sec. 409.204(1)) requiring that the debtor have rights in the collateral, was enacted by 1963 Wis. Laws, ch. 158, sec. 1. It would appear by the application of the above principles of construction that the newer provision, sec. 342.15(3), Stats., must be construed as controlling the issue.

However, this result cannot be reached when it is noted that sec. 342.10(5), Stats., providing that the certificate only is prima facie evidence of its contents, was also enacted by 1965 Wis. Laws, ch. 485, sec. 9. The conclusion that the provision of the vehicle certificate of title statutes was intended to supersede the more general provisions of the Commercial Code cannot be accepted if the language of sec. 342.10(5) is recognized to affirm the concept that the truth of the matters stated on a vehicle certificate of title is subject to rebutting evidence.

National's position is consequently weakened by the application of another fundamental rule of statutory construction: "That each part or section of a statute should be construed in connection with every other part or section so as to produce a harmonious whole." 2A Southerland, *Statutory Construction*, §46.05 at 56 (4th ed. 1973).

We note that sec. 342.15(3) does not unambiguously state when title to the automobile is transferred from a vendor to a purchaser. While this section states that except as between the parties a transfer is not effective until the provisions have been complied with, the statutes do not specify when compliance is achieved. For example, sec. 342.15(6) provides, in addition to forfeiture for failing to apply for a new certificate immediately upon transfer of the vehicle, that a certificate is considered to have been applied for when the application, accompanied by the required fees, has been delivered to the division or properly mailed. This seems to indicate that once the application is mailed, title to the vehicle passes: the purchaser has complied with the statutes requiring application. However, sec. 342.12(2), Stats., permits the division to withhold issuance of a new certificate of title if the division is not satisfied as to the ownership of the vehicle. Because it is doubtful that the legislature contemplated that the interest of the purchaser-applicant in the vehicle would change between the time the application is mailed and the decision to issue the new title is made, the "ownership" with which the division may be concerned must exist or not exist at or before the time of the application. We think that the ownership to which this section refers is the underlying legal transaction resulting in the conveyance of the vehicle.

Based on the uncertainty with which the motor vehicle statutes purport to establish the time of the transfer of title in a vehicle, the express legislative intent that a

certificate of title constitutes only prima facie evidence of ownership, and the necessity that a debtor have rights which may be encumbered to form an enforceable security agreement, we conclude that National did not acquire enforceable security interest in the automobile.

*By the Court.*—Judgment affirmed.