BACHELLER, Plaintiff-Respondent, v. EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY, Defendant-Appellant: JASKOLSKE, and others, Defendants. [Case No. 77–760.]†

KOLGEN, Plaintiff-Respondent, v. EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY, Defendant-Appellant: JASKOLSKE, and others, Defendants. [Case No. 77–761.]†

Supreme Court

Nos. 77–760, 77–761. Argued January 9, 1980.—Decided February 7, 1980.

(Also reported in 287 N.W.2d 817.)

† Motions for reconsideration denied, without costs, on April 8, 1980.

For the appellant there were briefs by *Philip A. Munroe* and *Di Renzo & Bomier* of Neenah, and oral argument by *Philip A. Munroe.*

For the respondents there was a joint brief by *Harvey G. Samson* and *Bollenbeck, Block, Froehlich & Seymour, S.C.,* of Appleton, for Bonnie R. Bacheller; and by *Robert Torgerson* and *Torgerson, Hesson & Murphy, Ltd.,* of Neenah, for Susan Ann Kolgen, with oral argument by *Harvey G. Samson.*

BEILFUSS, C.J. Employers Mutual Liability Insurance Company appeals from the orders of the circuit court for Winnebago county denying its motions for summary judgment. The principal issue raised by Employers is whether compliance with sec. 342.15 (1) (a), Stats.,[1] is a necessary prerequisite to a change in ownership of an automobile for purposes of determining liability for damages resulting from its operation.

Both actions in this consolidated appeal arise out of an automobile accident which occurred on County Trunk Q near the intersection of Tayco Street Road in the Town of Menasha on September 11, 1976. On that date Richard J. Jaskolske was operating a 1974 Excalibur automobile when it veered into a metal guard rail, spun around and struck a concrete railing. William L. Bacheller and William B. Kolgen, who were passengers in the car, died as

---

[1] "342.15 **Transfer of interest in a vehicle.** (1)(a) If an owner transfers an interest in a vehicle, other than by the creation of a security interest, the owner shall at the time of the delivery of the vehicle, execute an assignment and warranty of title to the transferee in the space provided therefor on the certificate, and cause the certificate to be mailed or delivered to the transferee, except that if the vehicle being transferred has been junked, the owner shall return the certificate to the department in accordance with s. 324.34."

a result of injuries sustained in the crash. These actions were commenced under sec. 895.04, Stats., by Bonnie R. Bacheller and Susan Ann Kolgen as widows of the decedents.

Employers Mutual was named as a defendant in the actions on the basis of the automobile liability policy issued by it to John J. Bergstrom, the registered owner of the Excalibur on the date of the accident. The policy contains an omnibus coverage provision statutorily required of all automobile insurance policies issued in this state.[2] Under

---

[2] Sec. 632.32, Stats., is entitled: "**Required provisions for animal and automobile liability insurance.**" Sub. (2)(b) provides:

"(b) *Required provisions.* Every policy of the kind specified in sub. (1) issued or delivered in this state to the owner of a motor vehicle shall contain a provision substantially as follows: 'The coverage provided by this policy applies, in the same manner and under the same provision as it is applicable to the named insured to any person while riding in or operating any automobile described in this policy when the automobile is being used for purposes and in the manner described in the policy. Such coverage also extends to any person legally responsible for the operation of the automobile.' However, the policy may limit coverage to instances in which the riding, use or operation is with the permission of the name insured, or if the insured is an individual with the permission of an adult member of the insured's household other than a chauffeur or domestic servant. In both cases such permission is permission without regard to s. 343.45(2) or to whether the riding, use or operation is authorized by law. Any such policy issued to an automobile handler may provide that the coverage afforded to anyone other than the named insured, agents or employes may be restricted to the limits under s. 344.01(2)(d) and applies only when there is no other valid and collectible insurance with at least those limits whether the other insurance is primary, excess or contingent. Any such policy issued to anyone other than an automobile handler may provide that the coverage afforded thereunder to any automobile handler or its agents or employes is restricted to the limits under s. 344.01 (2)(d) and applies only when there is no other valid and collectible insurance with at least those limits whether the other insurance is primary, excess or contingent. If an automobile covered by this policy is sold or transferred the purchaser or transferee is

this provision, a person driving an automobile described in the policy with the permission of the named insured owner is provided the same coverage as the named insured. The Excalibur that was involved in the accident is listed in the policy issued by Employers to Bergstrom. Thus, if Jaskolske was driving it with Bergstrom's permission at the time of the accident the omnibus coverage provided by Bergstrom's policy is applicable.

Employers contends, however, that it cannot be liable because Bergstrom sold the Excalibur to Jaskolske prior to the accident. Sec. 632.32 (2) (b), Stats., states expressly that if an automobile covered by a policy is sold or transferred, the purchaser or transferee is not an additional insured without the consent of the insurer endorsed on the policy. Employers argues that Jaskolske was not an additional insured because there is no endorsement on the policy issued to Bergstrom.

In support of its motion for summary judgment Employers submitted affidavits and portions of depositions which reveal the following undisputed facts: Jaskolske met with Bergstrom during the afternoon of the day of the accident for the purpose of purchasing Bergstrom's Excalibur automobile. Jaskolske had spoken with Bergstrom prior to this time about purchasing the car and had been informed that the price for it would be $14,500. When the two men met on the afternoon of September 11, 1976, Jaskolske wrote out a check for that amount and handed it to Bergstrom. In return Bergstrom gave Jaskolske a receipt and handed him the keys. Jaskolske then drove to a nearby restaurant where the car was parked, removed the license plates and drove it home.

not an additional insured without consent of the insurer, endorsed on the policy. No such policy issued to any automobile handler may exclude coverage upon any of its officers, agents or employes when the officers, agents or employes are operating automobiles owned by customers doing business with the automobile handler."

In the depositions, Jaskolske and his wife stated Bergstrom did not assign or deliver the certificate of title until several days after the accident. Bergstrom, in his affidavit, states he did assign and deliver the title at the time he gave Jaskolske possession of the vehicle.

When Jaskolske arrived at his home he told his wife that he had bought the car for her. The two of them took the car for a drive and visited several of their friends and relatives to "show off" their new car. Several people were given rides in the car. It was on one such ride, later that evening at approximately 10:30 p.m., that the fatal accident occurred.

Plaintiffs-respondents filed no counteraffidavits or opposing papers to the motion. The trial court nevertheless denied the motion stating that the materials submitted by Employers failed to establish a prima facie case for summary judgment on the issue of its liability. The trial court did grant the motion, however, with respect to Bergstrom, Employers' insured. It stated there were no factual allegations upon which his personal liability could be based.

With respect to Employers' liability the trial court concluded, apparently on the basis of the depositions in the record, that a factual dispute existed between the parties as to a material issue. That issue is whether the certificate of title for the automobile Jaskolske had allegedly purchased from Bergstrom had been endorsed and delivered to Jaskolske prior to the accident. In view of this court's decision in *Knutson v. Mueller,* 68 Wis.2d 199, 228 N.W.2d 342 (1975), resolution of that dispute was felt by the trial court to be necessary in order to determine whether coverage was extended to Jaskolske under the omnibus provision of the insurance policy issued by Employers.

On appeal Employers contends that the trial court's reliance upon *Knutson* is misplaced and the question of whether there was compliance with sec. 342.15(1)(a),

Stats., is immaterial to its liability. It claims that whether a sale occurred so as to terminate its coverage under the omnibus provision is governed not by sec. 342.-15(1)(a), but by sec. 402.401(2)[3] of the Uniform Commercial Code. This, it contends, was essentially the holding of the more recent case of *National Exchange Bank of Fond du Lac v. Mann,* 81 Wis.2d 352, 260 N.W.2d 716 (1978). Because the undisputed facts clearly reveal a sale under the U.C.C. standard, Employers argues, the trial court erred in denying its motion for summary judgment.

We believe that *National Exchange Bank of Fond du Lac, supra,* is distinguishable upon its facts from *Knutson* and that the trial court applied the proper law in refusing to render summary judgment in favor of Employers. We therefore affirm.

*Knutson v. Mueller, supra,* like the case now before us, arose out of an automobile accident which occurred shortly after the alleged sale of the auto involved in the accident. The issue there was whether there was an effective transfer of a personally owned automobile to a corporation such that the corporation's insurer was liable for the damages resulting from the accident. The alleged transfer was made by the individual owner to her husband who was acting on behalf of the corporation. She endorsed the certificate of title in blank and delivered

[3] "(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading:

"(a) If the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but

"(b) If the contract requires delivery at destination, title passes on tender there."

it to her husband several days before the accident. He then took possession of the car and told her the company would take care of the rest. The title certificate was placed in the company's safe where it remained until after the accident.

The trial court in that case instructed the jury that it should find that a transfer occurred if they found that the husband was acting with the authority of the company and that the parties agreed that title to the automobile was to be transferred to the corporation at the time he took possession. Guided by this instruction, the jury concluded that a transfer had in fact occurred and that the company owned the automobile at the time of the accident.

On appeal the company's insurer argued that the trial court had erred in instructing the jury that the intent of the parties was determinative of the question of when the transfer occurred. It contended that sec. 342.15, Stats., of the Vehicle Code which requires the owner to endorse and deliver the certificate of title to the transferee controlled. Because the title was endorsed in blank, the insurer argued, compliance with sec. 342.15 was lacking and the attempted transfer was therefore ineffective.

The plaintiff, on the other hand, contended, as Employers does here, that sec. 402.401, Stats., of the Uniform Commercial Code governed and that the trial court's instructions were correct.

Construing sec. 342.15, Stats., for the first time since its legislative revamping in 1966, we held, on the basis of sub. (3) of that section, that it was clearly intended to govern the question of automobile ownership in the context of personal injury actions arising out of the automobile's use. Sec. 342.15(3) provides:

"(3) Except as provided in sub. (1) (d) and s. 342.16 and as between the parties, a transfer by an owner is

not effective until the provisions of this section have been complied with. An owner who has delivered possession of the vehicle to the transferee and has complied with the provisions of this section requiring action by him or her is not liable as owner for any damages thereafter resulting from operation of the vehicle."

We acknowledged in *Knutson* a number of earlier cases in which the court had "held that questions of insurance coverage turning upon whether ownership of a car had been transferred prior to an accident were to be determined under the Uniform Sales Act, the precursor to the Uniform Commercial Code, according to the intentions of the parties, rather than under any provision of the Vehicle Code." *Id.*, 68 Wis.2d at 206. However, these cases were decided under the law as it existed prior to the legislative revamping of sec. 342.15, Stats., and therefore deemed not to be authoritative.

Particularly in view of the last sentence of sec. 342.15 (3), Stats., and the accompanying comment to the Uniform Motor Vehicle Certificate of Title and Anti-Theft Act for which subs. (1) and (3) of sec. 342.15 were taken almost verbatim, the legislature's intent to have sec. 342.15 govern this question was determined to be evident. The last sentence of sec. 342.15(3) reads: "An owner who has delivered possession of the vehicle to the transferee and has complied with the provisions of this section requiring action by him or her is not liable as owner for any damages thereafter resulting from operation of the vehicle." The comment of the National Conference of Commissioners of Uniform State Laws states that this language "should be included in the Act as adopted unless other laws of the state clearly fix the time when an owner of a vehicle who transfers it ceases to be liable for its operation.[4] By adopting the last sentence of sec. 342.15(3), we held in *Knutson,* the legisla-

---

[4] Handbook of the National Conference of Commissioners on Uniform State Laws, 1955, p. 180.

ture intended to have that section rather than the Uniform Commercial Code govern questions of when one ceases to be an owner of a vehicle for purposes of determining liability in a personal injury action. *Id., 68 Wis.2d at 208.*

Despite our express holding in *Knutson,* however, Employers contends that compliance with sec. 342.15, Stats., is not required for a change in ownership and that the trial court abused its discretion in denying its motion for summary judgment. As support for its contention Employers cites *National Exchange Bank of Fond du Lac v. Mann, supra.*

The issue before the court in *National Exchange Bank,* however, was the validity of a security interest in an automobile which arose subsequent to the sale of the automobile. Although we did accept in that case the same contention made here by Employers, it was in an entirely different context. Our holding in *Knutson* was expressly limited to the question of automobile ownership as it affected a personal injury action. *National Exchange Bank* had nothing to do with a personal injury action and our decision in *Knutson* was not referred to. Certainly, nothing said in *National Exchange Bank* should be construed as overruling *Knutson.*

We therefore conclude, on the basis of our holding in *Knutson v. Mueller, supra,* that the trial court properly denied Employers' motion for summary judgment. Not only is the question of whether there was compliance with sec. 342.15(1), Stats., material to the issue of Employers' liability, but under *Knutson* it is determinative. Where the question of compliance is in dispute summary judgment is inappropriate.

We also reject Employers' contention that plaintiffs waived any claim they may have had by expressly disclaiming any reliance upon the policy's omnibus coverage. Plaintiffs seem to have read sec. 342.15(3), Stats., to-

gether with our decision in *Knutson v. Mueller, supra,* as creating a new basis for liability for damages arising out of an automobile accident when sec. 342.15(1) has not been complied with. Evidently, they are under the impression that a seller is absolutely liable for damages caused by the negligent operation of his car if he fails to endorse and deliver the certificate of title.

This is not the law in Wisconsin. More than mere ownership is required for one to be liable for the negligent operation of an automobile. *See O'Leary v. Porter,* 42 Wis.2d 491, 167 N.W.2d 193 (1969). Sec. 342.15(3), Stats., as construed by this court in *Knutson,* is not an independent basis for liability, but only establishes a convenient test for determining when liability, based in part upon ownership, terminates.

However, even though plaintiffs may have misunderstood to some extent the basis of their claim against Employers, it does not follow that they have waived the claim itself. The trial court properly denied Employers' motion for summary judgment because a factual dispute existed as to whether the omnibus provision of its policy applied. It is this ruling by the trial court that Employers has challenged on this appeal. Regardless of plaintiffs' misunderstanding of their case, the trial court's ruling is properly before us.

*By the Court.*—Orders affirmed.

The following memorandum was filed on April 15, 1980.

PER CURIAM *(on motion for reconsideration).* Upon reconsideration, we modify our opinion.

Initially, we held that whether a sale or transfer effectively shifts liability for damages from the seller or transferor to the buyer or transferee is governed exclu-

sively by sec. 342.15, Stats., of the Vehicle Title and Anti-Theft Law chapter, not sec. 402.401(2), of Wisconsin's Uniform Commercial Code. This conclusion was based on a narrow reading of subs. 1(a) and (3) of sec. 342.15 [1] and our interpretation of those provisions in *Knutson v. Mueller,* 68 Wis.2d 199, 228 N.W.2d 342 (1975). Upon further consideration, we now conclude that, although strict compliance with sec. 342.15 conclusively establishes that a change in ownership has occurred, statutory compliance is not an essential condition for effecting such a change.

Our principal difficulty with this case has centered on how best to read *Knutson, supra,* in conjunction with *National Exchange Bank of Fond du Lac v. Mann,* 81 Wis.2d 352, 260 N.W.2d 716 (1978). In our initial decision, we distinguished *Knutson* from *National Exchange Bank* on the grounds that the rationale espoused in *Knutson* governed when the question of motor vehicle ownership arises in a damage action, while the *National Exchange Bank* test for determining ownership controls when the question arises in a commercial context.

The difficulty with this interpretation of the two cases, however, is that it fosters confusion by imposing

[1] "342.15 **Transfer of interest in a vehicle.** (1)(a) If an owner transfers an interest in a vehicle, other than by the creation of a security interest, the owner shall at the time of the delivery of the vehicle, execute an assignment and warranty of title to the transferee in the space provided therefor on the certificate, and cause the certificate to be mailed or delivered to the transferee, except that if the vehicle being transferred has been junked, the owner shall return the certificate to the division in accordance with s. 342.34."

"(3) Except as provided in s. 342.16 and as between the parties, a transfer by an owner is not effective until the provisions of this section have been complied with. An owner who has delivered possession of the vehicle to the transferee and has complied with the provisions of this section requiring action by him or her is not liable as owner for any damages thereafter resulting from operation of the vehicle."

two different standards to be used in making essentially the same determination. Whether it arises in a commercial context or a damage action context, the issue to be decided is who owns the vehicle. By holding that sec. 342.15(1), Stats., governs this question when an accident occurs, but the Uniform Commercial Code governs when the dispute is of a commercial nature, our initial decision made possible a situation in which the same individual could own a vehicle for purposes of determining liability for damages resulting from an accident but, at the same time, not own the vehicle in a dispute with the purchaser over the vehicle itself.

The most reasonable way in which to reconcile *Knutson* and *National Exchange Bank,* and the one we adopt herein, is to view the disparate results in the two cases as being attributable to different factual situations. In *Knutson,* the car, its keys, and its certificate of title were all delivered to the corporation prior to the accident. Despite this fact, the corporation's insurer contended that the transfer was ineffective because the title certificate had been endorsed only in blank. The *Knutson* court rejected the insurer's argument, stating that under sec. 342.15(3), Stats., delivery of the vehicle along with an endorsed certificate of title was sufficient, as a matter of law, to insulate the transferor from liability.

The situation in *National Exchange Bank* and the case at bar are distinguishable. The question here is not whether the endorsement and delivery of the certificate of title conclusively shows a transfer of ownership, but whether such a transfer can occur without the endorsement and delivery. In a very narrow sense, the issue is different than that confronted in *Knutson.* It does not necessarily follow from the statement in *Knutson*—that strict compliance with sec. 342.15 conclusively proves that a transfer of ownership liability occurred—that no transfer can occur absent such compliance. The title

certificate is only evidentiary. Where it has been endorsed and delivered, a conclusive presumption arises, as provided in sec. 342.15(3), that ownership was transferred; where it has not been endorsed and delivered, the intent and conduct of the parties govern.

Treating the issue in this way is consistent with the last sentence of sec. 342.15(3), Stats., which reads:

"An owner who has delivered possession of the vehicle to the transferee and has complied with the provisions of this section requiring action by him or her is not liable as owner for any damages thereafter resulting from operation of the vehicle."

This provision does not state that compliance is necessary to avoid liability, or that nothing else will suffice, but only that, where an owner has complied, he ceases to be liable. Such a reading is also consistent with sec. 342.10(5), Stats., which provides that the certificate of title is only "prima facie evidence of the facts appearing on it." Moreover, our conclusion that the transfer of a vehicle may be effective for purposes of shifting ownership liability in a damage action despite the absence of strict compliance with sec. 342.15, is supported by other provisions in the vehicle code.[2]

---

[2] For example, sub. (6) of sec. 342.15 implies that compliance is achieved, and therefore ownership transferred, when the application for a new certificate accompanied with the required fee has been deposited in the mail. However, under sec. 342.12(2), the motor vehicle division is authorized to withhold issuance of a new certificate if it is not satisfied as to the applicant's ownership of the vehicle. If the division can have doubts as to the applicant's ownership once compliance has been achieved, it necessarily follows that compliance is not by itself conclusive proof of ownership.

Similarly, sub. (5) of sec. 342.15 states that an owner of a registered vehicle who *upon transfer* fails to endorse and deliver the certificate of title as required under sub. (1) of that section may be required to forfeit not more than $200. Implicit in the fact that a civil forfeiture may be imposed upon one who transfers his vehicle without complying with sec. 342.15(1) is the addi-

Thus, as we concluded in *National Exchange Bank*, sub. (3) of sec. 342.15 cannot be read as requiring strict compliance with the provisions of that section as a prerequisite to a change in ownership.

Despite modifying our application of the scope of sec. 342.15(3), Stats., we nevertheless confirm our holding that the trial court properly denied Employers Mutual's motion for summary judgment. We reject Employers Mutual's contention that the undisputed facts so clearly reveal a sale under the applicable standard that it was error for the trial court to deny its motion. Although endorsement and delivery of the certificate of title are not essential conditions for a transfer of a motor vehicle to occur, they are nevertheless relevant, and may be conclusive, factors in determining whether an effective transfer occurred. Unlike *National Exchange Bank*, 81 Wis. 2d at 381, where the parties stipulated that the buyer was a bona fide purchaser for value, the dispute in this case as to the transfer of the title certificate raises a material issue of fact as to ownership. Given the drastic nature of the summary judgment procedure, it was not improper for the trial court to deny Employers Mutual's motion and wait for a full factual record upon which to base its decision.

---

tional fact that compliance with sec. 342.15(1) is not essential for such a transfer to occur.

A further problem with requiring strict compliance with sec. 342.15 is that that provision requires the parties to perform a variety of minor actions in addition to exchanging the car and title. For instance, sub. (1)(b) provides that "No person shall transfer a motor vehicle without disclosing in writing to the transferee the odometer reading"; and sub. (4) requires that "the owner shall remove the registration plates." If sec. 342.15(3) is read narrowly, the seller remains liable unless *all* the provisions of the section are complied with.