## In re CONTINENTAL FIRE TRUCKS, INC., Debtor.

## CONTINENTAL FIRE TRUCKS, INC., Plaintiff,

### v.

## JOHN GRAPPONE, INC., Defendant.

Bankruptcy No. 81–539–L.

Adv. No. 81–0499–L.

United States Bankruptcy Court, D. Massachusetts.

Oct. 12, 1983.

Frank A. Crosson, Peter B. McGlynn, Richmond, Rosen, Crosson & Resnek, Boston, Mass., for plaintiff.

Ernest T. Smith, III, Upton, Sanders & Smith, Concord, N.H., for defendant.

## MEMORANDUM AND ORDER

THOMAS W. LAWLESS, Chief Judge.

### ISSUE

Whether title passed and a sale occurred when John Grappone, Inc. delivered a Ford C8000 chassis to Continental Fire Trucks, Inc. on or about July 8 or July 30, 1980, notwithstanding the retention of the certificate of origin by John Grappone, Inc.?

### BACKGROUND

On January 2, 1980, Continental Fire Trucks, Inc. (Continental), a manufacturer of fire trucks, issued purchase order No. 3757 to John Grappone, Inc. (Grappone), an authorized Ford Motor Company agent, for the purchase of a 1980 Ford C8000 chassis. The purchase price was stated at $24,138.00 and Continental and Grappone agreed that the purchase price for the Ford C8000 chassis would be deferred until it was reconstructed as a fire truck and delivered and paid for by the Town of Waretown, New Jersey. During the deferred payment period, Continental agreed to pay Grappone its "floor plan" interest charges assessed on the Ford chassis by Ford Motor Company. At least one invoice for "floor plan" interest charges was sent to Continental for the period September-October 1, 1980. The Ford C8000 chassis was delivered to Continental in Hopkinton, Massachusetts on or about July 8, 1980 or July 30, 1980. Grappone withheld delivery of the manufacturer's certificate of origin pending payment of the purchase price to it. On April 4, 1981, Continental filed for protection under

Chapter 11 of the Bankruptcy Code. Continental operated as a debtor-in-possession until its plan of reorganization was confirmed by this Court on May 26, 1982. On June 22, 1981, a complaint was filed on behalf of Continental against Grappone seeking specific performance for turnover to compel Grappone to deliver the manufacturer's certificate of origin to Continental. Continental completed construction of a fire truck on the Ford C8000 chassis in question and pursuant to a stipulation between the parties (in which Grappone released the certificate of origin to Continental) sold the completed fire truck to the municipality of Waretown, New Jersey on or about June 23, 1981. In accordance with the stipulation approved by this Court, the sum of $27,000.00 is being held in escrow until the rights of the parties are determined.

## DISCUSSION

■ Grappone alleges that a sale did not take place because of the retention of the manufacturer's certificate of origin by Grappone. I do not agree. M.G.L. c. 106 § 2–106(1) states:[1] "A 'sale' consists in the passing of title from the seller to the buyer for a price...." The passage of title is governed by M.G.L. c. 106 § 2–401, which provides in pertinent part:

(1) ... title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by parties.

(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place....

■ Grappone completed its delivery obligations when the Ford C8000 chassis was delivered to Continental on or about July 8 or July 30, 1980. Despite the explicit agreement between the parties that Grappone would retain the certificate of origin, this does not prevent title from passing from the seller Grappone to the buyer Continental. *See Central National Bank of Mattoon v. Worden—Martin, Inc.,* 90 Ill. App.3d 601, 46 Ill.Dec. 99, 413 N.E.2d 539, [30 U.C.C.Rep. 1140, 1143–1144] (1980); M.G.L. c. 106 § 2–401(2); *Wood Chevrolet Co., Inc. v. Bank of the Southeast,* 352 So.2d 1350 [23 U.C.C.Rep. 290, 292] (Ala.1977); *see generally, National Exchange Bank of Fond du Lac v. Mann,* 81 Wis.2d 352, 260 N.W.2d 716 [23 U.C.C.Rep. 510, 514] (1978); *Guy Martin Buick, Inc. v. Colorado Springs National Bank,* 32 Colo.App. 235, 511 P.2d 912, [12 U.C.C. 612, 615] (1973) aff'd 14 U.C.C.Rep. 40, 184 Colo. 166, 519 P.2d 354 (1974); *Waggoner v. Wilson,* 31 Colo.App. 518, 507 P.2d 482 [12 U.C.C.Rep. 476, 478] (1972). Although Grappone alleges that certain language[2] on the back of purchase order No. 3757 issued to Continental is also an explicit agreement within the purview of M.G.L. c. 106 § 2–401(2), not only is this alleged "explicit" agreement not signed by a representative of Continental, but also it is clear from M.G.L. c. 106 § 2–401(2) that the language on the back of the purchase

---

**1.** In its pre-trial memorandum filed with this Court on December 28, 1981 Grappone argued that New Hampshire law controls (Continental maintains that Massachusetts law controls). M.G.L. c. 106 § 1–105(1) states that "Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or such other state or nation shall govern their rights and duties. Failing such agreement this Chapter applies to transactions bearing an appropriate relation to this state." No agreement exists between the parties. Considering that Continental's principal and only place of business and its assets are located in Massa-

chusetts, Continental's purchase order was executed in Massachusetts, and fabrication on the Ford Chassis occurred in Massachusetts, I find that this transaction bears an "appropriate relation to this state" and I will apply the Massachusetts law herein.

**2.** "It is expressly agreed that the purchaser acquires no right, title or interest in or to the property which he agrees to purchase hereunder until such property is delivered to him and either the full purchase price is paid in cash or a satisfactory deferred payment agreement is executed by the parties hereto, the terms of which shall be controlling."

order form amounts, as does the agreement regarding the retention of the certificate of origin, to a reservation of a security interest.[3] *See Akron Brick & Block Co. v. Moniz Engineering Co., Inc.* 365 Mass. 92, 310 N.E.2d 128 [14 U.C.C. 563, 566] (1974). I find that title passed and a sale took place between the parties when Grappone delivered the Ford C8000 chassis to Continental on or about July 8 or July 30, 1980. *See Central National Bank of Mattoon, supra; National Exchange Bank of Fond du Lac, supra; Wood Chevrolet, supra; Waggoner v. Wilson, supra; Hicks v. Kentucky Farm Bureau Mutual Insurance Co.,* 455 S.W.2d 52 [7 U.C.C. 1322, 1324] (Ky., 1970); *Motors Insurance Corp. v. Safeco Insurance Co. of America,* 412 S.W.2d 584 [4 U.C.C. 192, 193] (Ky., 1967).

The statute of frauds provision of M.G.L. c. 106 § 2–201(1) need not concern us here in relation to the "contract of sale" because an oral contract is sufficient to satisfy the statute of frauds for goods received and accepted. *See* M.G.L. c. 106 § 2–201(3)(c); *Hicks, supra; Motor Insurance Corp. v. Safeco Insurance Co. of America, supra.* I find that the goods were received and accepted by Continental pursuant to an oral contract of sale on or shortly after their delivery by Grappone to Continental on or about July 8 or 30, 1980. *See* M.G.L. c. 106 § 2–606(1)(a)(b)(c). Accordingly, I find that Continental is entitled to the escrow fund of $27,000.00.

In terms of any "interest" which Grappone may have in the vehicle and thus the escrow fund by either its retention of the certificate of origin and/or the language on the back of purchase order No. 3757, M.G.L. c. 106 § 2–401(2) makes it obvious that Grappone's interest, if any, amounts to a reservation of a security interest. To preserve such a security interest in a motor vehicle,[4] perfection would normally take place under the Massachusetts Motor Vehicle Certificate of Title Law, M.G.L. c. 90D. *See* M.G.L. c. 106 § 9–302(3)(b). However, in this instance M.G.L. c. 90D § 2(a)(2) provides that no certificate of title is needed for: "A vehicle owned by a manufacturer or dealer and held for sale...." *See generally, In re Haugabook Auto Co., Inc.,* 9 U.C.C. 954, 960 (DCMD Ga., Ref., 1971). It is undisputed that Grappone is a dealer, thus perfection must be accomplished under Article 9 of the Uniform Commercial Code (M.G.L. c. 106 § 9–101 *et seq.*). There is no evidence before this Court of any perfection of Grappone's reserved security interest under Article 9. Indeed, Grappone does not assert one. The Bankruptcy Code provides that: "If, as of the commencement of the bankruptcy case, there exists unperfected liens or security interests, the Trustee or debtor-in-possession can avoid the interest, preserve the property for the benefit of the estate under § 551, and relegate the creditor to the status of a general unsecured creditor." *In re Yeager Trucking,* 29 B.R. 131, 133 (Bkrtcy. D.Colo.1983); *see* 11 U.S.C. § 544; 11 U.S.C. § 551. Thus, although Grappone does not argue that it has a security interest in the goods, *assuming arguendo* that it has one by either its retention of the certificate of origin and/or the language on the back of purchase order No. 3757, Grappone's interest is, at best, that of a general unsecured creditor.

---

**3.** Regarding any rights that Ford Motor Company may have in the Ford C8000 chassis under its floor plan financing agreement, this security interest was never established or alleged to be that of Grappone's nor did Ford Motor Company assert any right in the Ford C8000 chassis or allege perfection thereof; and as such this Court has not addressed this security interest nor does it bear on the issue in the case at bar.

**4.** The "Goods" in question come within the definition of a "Motor Vehicle" or "Vehicle" in M.G.L. c. 90D § 1: "... all vehicles constructed and designed for propulsion by power other than muscular power...."