# COURT OF APPEALS
## DECISION
## DATED AND FILED

## March 17, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.   **2024AP871**

STATE OF WISCONSIN

Cir. Ct. No.  **2024SC51**

IN COURT OF APPEALS
DISTRICT III

SAMANTHA ELLIOT,

   PLAINTIFF-RESPONDENT,

V.

TYLER HANSEL,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Washburn County: MELISSIA R. MOGEN, Judge. *Affirmed*.

¶1      STARK, P.J.[1]  Tyler Hansel appeals from a judgment of replevin requiring him to return a 2003 Mitsubishi Lancer Evolution (the vehicle) to

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24).  All references to the Wisconsin Statutes are to the 2023-24 version.

Samantha Elliot.[2] Hansel also challenges the circuit court's denial of his motion to dismiss Elliot's complaint because the value of the vehicle exceeded the limit for small claims actions and the court's ruling that the vehicle's original title be destroyed. For the reasons that follow, we reject Hansel's arguments and affirm.

## BACKGROUND

¶2 On February 23, 2024, Elliot filed this small claims replevin action, seeking the return of the vehicle from Hansel. Elliot and Hansel had been in a long-term romantic relationship that had recently ended. Elliot alleged that they purchased the vehicle together during their relationship in 2011 and that she was the rightful owner because the vehicle was titled in her name. Elliot attached a replacement copy of the title, listing her as the owner, to her complaint.

¶3 Hansel filed his answer and also a counterclaim against Elliot, alleging that Elliot had transferred title to the vehicle to him in July 2019 and that she "ha[d] somehow or another removed the lien holder[']s name on the title." Hansel argued that Elliot's complaint was "frivolous and deceitful" and requested a money judgment for $25,000. Hansel later moved to dismiss Elliot's complaint, arguing that the value of the vehicle exceeded the amount in controversy for a small claims replevin action under WIS. STAT. § 799.01(1)(c).

¶4 On May 1, 2024, the circuit court held a trial to the court, where both Elliot and Hansel testified. The court first addressed Hansel's motion to dismiss on the record. Elliot testified that the vehicle's value was $5,000 to $8,000 because "[i]t doesn't even run." In contrast, Hansel alleged that the vehicle was

---

[2] Hansel is represented by counsel on appeal, while Elliot is self-represented.

2

worth $46,000, but with "all the modifications" that he made to the vehicle, the value was closer to $82,000. Given the vast discrepancy, the court determined that it would need more evidence as to the vehicle's value, and it orally denied the motion to dismiss on the record.

¶5 Elliot testified that when she and Hansel were in a relationship, they purchased "quite a few vehicles" together, but when they "parted ways," Hansel "took everything," including the vehicle at issue in this case "that's in [her] name." Elliot produced a replacement title for the vehicle, which lists her as the owner with no lien holders. In response, Hansel produced a title listing Elliot as the owner and Nelson Nels Fairfax, the previous owner (hereinafter, Nels), as the lien holder. Elliot's signature was on the back of the title, dated July 5, 2019. Hansel testified that he later inserted his name as the purchaser of the vehicle on the title. It is undisputed, however, that Hansel never registered the vehicle in his name with the Wisconsin Department of Motor Vehicles (DMV), nor did he request a new title for the vehicle.

¶6 Elliot admitted that it was her signature on the title, but she explained that Hansel's "name was not on [the title] when [she] signed," that the vehicle "was not ever to go to" Hansel, and that Hansel wrote his information on the title later, noting that his signature is undated and in different color ink. According to Elliot, she "didn't convey the car to" Hansel; instead, she signed the title because Hansel told her that Nels "was supposed to come and take [the vehicle] back" and threatened her that "if [she] didn't sell it back to [Nels], he was going to put [her] in prison." Elliot testified that years later, after their relationship ended and Hansel refused to turn over the vehicle or the title, she went to the DMV to get a replacement copy of the title. She stated that she was told by a DMV employee that because it had been over ten years, "you don't have a lien

holder on it anymore," and Nels was removed from the title. *See* WIS. STAT. § 342.22(3).

¶7 For his part, Hansel testified that he purchased the vehicle from Nels in 2011, that he paid for the initial payment on his own, that he received no contributions from Elliot, that he still owed $3,000 to Nels for the purchase price, that the last payment he made to Nels was two years ago because "it's a loose schedule … because [they are] friends," and that the lien was active. Hansel alleged that Elliot was listed as the owner because he did not have a valid driver's license at the time of purchase and that he got his license back in 2013. Hansel stated that he watched Elliot sign the title and that it was always the understanding that the vehicle would be transferred to him and titled in his name, but he acknowledged that he did not sign contemporaneously with Elliot. He signed the title as the purchaser "[n]ot all that long after" Elliot signed.

¶8 As to the value of the vehicle, Hansel supported his estimated value of $46,000 by explaining that "it's a very rare car," that it is "listed in [the] supercar category along with Lamborghinis [and] Porsches," and that he had "heavily" modified it as a "project car." Hansel also presented a printout from Kelley Blue Book, listing the value of the car as between $27,129 and $31,368. Nevertheless, he admitted that the vehicle was not "drivable" because the "clutch is tore [sic] out of it" and that it was damaged when he relocated the vehicle. Neither party presented any additional expert testimony as to the value of the vehicle.

¶9 After the close of evidence, the circuit court found in favor of Elliot and issued an oral ruling to that effect, which was later memorialized by a written decision and order. Significantly, the court found Elliot more credible than

Hansel. The court explained that it had been almost five years since Elliot signed the title, and "Hansel has not complied with Wisconsin law relating to titling and registering vehicles." "As such, and based upon testimony of the parties," the court stated that it "believe[d] that there was some aspect of fraud or evasion of legal requirements involved." Therefore, it found that the vehicle was legally titled in Elliot's name and that she is the owner of the vehicle. It also found that the vehicle was not worth the amount "[t]he defense would like the Court to believe," noting that "[t]here were no pictures of the vehicle, no car expert was called to testify, nor was there any appraisal of the vehicle completed." Accordingly, the court concluded, based on the evidence provided, that it could not "find that it is worth over $10,000." The court thereafter entered a judgment of replevin in favor of Elliot. Hansel appeals.[3]

## DISCUSSION

¶10 Hansel presents three arguments for our review. First, he argues that the circuit court erred by denying his motion to dismiss Elliot's complaint because the value of the vehicle "was above the threshold amount for small claims court."[4] Second, he argues that the court's finding that Elliot was the owner of the vehicle was clearly erroneous because "ownership of the vehicle … was established upon

---

[3] Hansel did not file a reply brief in this case. By failing to file a reply, he has arguably conceded any arguments raised in Elliot's response brief that his initial brief did not already address. *See Apple Hill Farms Dev., LLP v. Price*, 2012 WI App 69, ¶14, 342 Wis. 2d 162, 816 N.W.2d 914 (noting that the failure to file a reply brief was deemed a concession to the respondent's argument).

[4] Although this is not the order in which Hansel presented his arguments on appeal, we address them in this order because a conclusion in Hansel's favor on the motion to dismiss issue would prove dispositive with regard to the remaining issues. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (stating that an appellate court need not address every issue raised by the parties when one issue is dispositive).

[Elliot's] signature on a vehicle title" and upon Hansel also "sign[ing] the title." Finally, Hansel challenges the court's order to destroy the original title to the vehicle. For the reasons that follow, we reject all of Hansel's arguments and affirm the judgment of the circuit court.[5]

## I. Motion to Dismiss

¶11     Hansel's motion to dismiss essentially argued that the small claims court did not have jurisdiction over the replevin action because the value of the vehicle "exceeded" "[t]he amount in controversy for personal property in a replevin action." On appeal, Hansel asserts that the circuit court erred by determining that the value of the vehicle was under $10,000 "without credible evidence."

¶12     Under WIS. STAT. § 799.01(1)(c), small claims actions for replevin are limited to those actions "where the value of the property claimed does not exceed $10,000."[6] The circuit court's determination of value is a finding of fact.[7]

---

[5] We note that Hansel had filed a counterclaim, arguing that Elliot's complaint was "frivolous and deceitful" and requesting a money judgment for $25,000. It does not appear that the circuit court addressed the counterclaim in its oral ruling or in its decision and order. Hansel also does not address his counterclaim on appeal.

We see no basis for Hansel's counterclaim. The court found Elliot to be credible, and it decided the case in her favor. We therefore conclude that the court implicitly found that Elliot's complaint was not frivolous or deceitful and denied the counterclaim.

[6] WISCONSIN STAT. § 425.205(1), however, creates an exception to WIS. STAT. § 799.01(1)(c) for consumer credit transactions. Section 425.205(1) provides that "a creditor seeking to obtain possession of collateral … shall commence an action for replevin … in accordance with [WIS. STAT.] ch. 799, notwithstanding [§] 799.01(1)(c) and the value of the collateral or leased goods sought to be recovered." Neither party suggests that § 425.205(1) is applicable here. Although Hansel testified that he still owed money to Nels for the vehicle, Nels was not the one seeking to obtain possession in this case.

[7] The parties both failed to address our standard of review of the circuit court's decision in their appellate briefing.

We will not upset a circuit court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2). Further, we defer to the circuit court's finding on the credibility of a witness, as it had "the opportunity to observe the witness' demeanor and gauge the testimony's persuasiveness." *Jacobson v. American Tool Cos.*, 222 Wis. 2d 384, 390, 588 N.W.2d 67 (Ct. App. 1998). On appeal, we will "search the record for evidence that supports findings the [circuit] court made, not for findings it could have made but did not." *Dickman v. Vollmer*, 2007 WI App 141, ¶14, 303 Wis. 2d 241, 736 N.W.2d 202. However, we review a circuit court's decision on a motion to dismiss de novo. *See Eternalist Found., Inc. v. City of Platteville*, 225 Wis. 2d 759, 769-70, 593 N.W.2d 84 (Ct. App. 1999).

¶13    We conclude that the circuit court did not err by denying Hansel's motion to dismiss. At the trial, the court heard testimony on the vehicle's value from both Hansel and Elliot. *See Mayberry v. Volkswagen of Am., Inc.*, 2005 WI 13, ¶42, 278 Wis. 2d 39, 692 N.W.2d 226 ("In Wisconsin, the general rule is that a non-expert owner may testify concerning the value of their property, regardless of whether it is realty or personalty." (citation omitted)). Elliot testified that the value of the vehicle was between $5,000 and $8,000, explaining that she came to that figure because "[i]t doesn't even run."

¶14    In contrast, Hansel testified that the vehicle was worth $46,000 and that with "all the modifications that was put into it, the car is sitting at $82,000." Hansel admitted on direct and cross-examination, however, that the vehicle "wasn't drivable" because "[t]he clutch is tore [sic] out of it," "the transmission is out," the "fifth gear … is out," and the vehicle had been damaged when he initially took possession of it from Elliot. Given Elliot's and Hansel's testimony, we cannot conclude that the circuit court's finding that the value of the vehicle was

below $10,000 was clearly erroneous, and, accordingly, it properly denied Hansel's motion to dismiss.

¶15    Hansel challenges this conclusion essentially on the basis of the weight the circuit court gave to Elliot's testimony over his own. First, he argues that "[a]ccompanying the motion was a kell[e]y blue book valuation showing the vehicle at issue's value" and that "value was further testified to by [Hansel] along with detailed corroborating information as to the nature and modifications of the vehicle giving rise to its relatively high value."

¶16    We agree that the record contains a document from Kelley Blue Book showing that the vehicle's "private party" value was between $27,129 and $31,368. Nevertheless, although the motion to dismiss states that Hansel's counsel obtained a "basic valuation" of the vehicle using Kelley Blue Book, the document does not state what "condition" of the vehicle was provided to obtain this estimated value range. In fact, the included "Glossary of Terms" clearly states that the private party value "depends on the car's actual condition and local market factors," and all of the listed definitions for "condition"—i.e., excellent, very good, good, fair—require that the vehicle "still [be] in safe running condition."

Given these factors, the circuit court did not err by refusing to rely on the Kelley Blue Book value range.[8]

¶17    Second, Hansel argues that Elliot "simply provided a much lower figure with no supporting information or sufficiently weighty testimony." Hansel further suggests that Elliot's valuation was incorrect because "[t]he vehicle was not in her possession," "[s]he did not know the specifics of the vehicle," and "[s]he did not supply any competing valuation." We reject Hansel's arguments in light of our standard of review.

¶18    Initially, we note that Hansel cites several cases for the proposition that an individual may testify to the value of their property and that an expert is not required; therefore, he does not dispute this proposition. *See **Mayberry***, 278 Wis. 2d 39, ¶42. Given that the dispute in this case involved whether Elliot or Hansel was the owner of the vehicle and that Elliot's name was clearly listed as the owner of the vehicle on both titles supplied to the circuit court by the parties,

---

[8] Additionally, Elliot argues on appeal that "there are aspects of [the Kelley Blue Book] valuation that [do not] tell the full story" because the vehicle "is titled as a prior salvage that was rebuilt" and "[a] vehicle that has been rebuilt from a salvage title has obviously depreciated more than a vehicle without a prior salvage title." We agree with Elliot that both titles provided by the parties in the record state "Prior Salvage, Rebuilt." (Formatting altered.) *See* WIS. ADMIN. CODE § Trans 139.02(16) (Nov. 2024) ("'Rebuilt salvage' means any repaired vehicle that has ever had a salvage notation on its certificate of title from Wisconsin or another jurisdiction."). Elliot failed, however, to provide any testimony or other evidence at the trial as to the impact of a salvage title on the value of a vehicle. Nevertheless, we do note that the Kelley Blue Book valuation provided by Hansel at the trial *does not* include any indication that the value range provided was for a vehicle with a salvaged, reconstructed, or otherwise clouded title. To the extent that the salvage title would support a common-sense inference, that inference would support the circuit court's finding that the vehicle's value was below $10,000. *See **State v. Holt***, 128 Wis. 2d 110, 124-25, 382 N.W.2d 679 (Ct. App. 1985), *superseded by statute on other grounds*, WIS. STAT. § 940.225(7) (explaining that as a matter of judicial efficiency, a respondent may advance for the first time on appeal any argument that would sustain the circuit court's ruling).

there is no question that Elliot was qualified to testify, and her testimony was legally sufficient as to the actual value of the vehicle. *See id.*

¶19 Instead, Hansel's arguments go to the weight the circuit court gave to Elliot's testimony. We reject this challenge. "The weight to be attached to a non-expert owner's testimony is for the trier of fact." ***Id.*** (citation omitted). The court clearly and specifically found, "[b]ased on the evidence provided," that Elliot's testimony as to the value was "more credible." We cannot and will not question that finding. Further, as to Hansel's suggestion that Elliot did not know enough about the vehicle because it was not in her possession at the time of the trial, we are not persuaded by this argument. Again, this fact goes to the weight of Elliot's testimony, and the court was well aware that she was not in possession of the vehicle. Also, Elliot clearly knew enough about the vehicle to question Hansel on cross-examination about issues with its condition in addition to the broken clutch.

¶20 Finally, Hansel argues that the circuit court committed an error of law because it "interpreted replevin actions to be operating completely independent of amounts in controversy." In short, Hansel appears to suggest that the court may have believed that the value of a vehicle in a replevin action is irrelevant. The problem with Hansel's argument is that the circuit court never said this. The court simply said, "It's a replevin, [counsel]. Read the law," and ended the hearing. The court's statement in this regard came after it had concluded on the record that Elliot was the rightful owner of the vehicle and that the original title should be destroyed. Hansel and his counsel both subsequently erupted disrespectfully, talking over the court to challenge its rulings. Although we note that WIS. STAT. § 425.205(1) does create an exception as to the value of the vehicle in a replevin action, *see supra* note 6, the court's written decision and

10

order does not mention § 425.205(1), and it made clear findings of fact and credibility determinations regarding the value of the vehicle. Thus, Hansel's argument in this regard is a nonstarter.

## II. Ownership of the vehicle

¶21 Hansel next challenges the circuit court's finding that Elliot is the owner of the vehicle. Hansel emphasizes that Elliot had signed the back of the vehicle's title transferring her ownership rights to Hansel and Hansel had taken possession. Accordingly, he claims that under Wisconsin law, ownership of the vehicle had transferred to Hansel at that time, regardless of whether Hansel had subsequently transferred title through the DMV.

¶22 This is a small claims replevin action, and "[r]eplevin is an action for possession where the factual question that must be resolved is 'which party is entitled to possession of the disputed property.'" *See Mueller v. TL90108, LLC*, 2020 WI 7, ¶12, 390 Wis. 2d 34, 938 N.W.2d 566 (citation omitted). A successful replevin claim requires that the plaintiff show (1) that "the plaintiff is entitled to possession of the property involved"; (2) that "the defendant unlawfully took or detained the property involved"; (3) "[t]he value of the property involved"; and (4) "[t]he damages sustained by the successful party from any unlawful taking or unjust detention of the property to the time of the trial." WIS. STAT. § 810.13(1); *see also Mueller*, 390 Wis. 2d 34, ¶12.

¶23 In this case, the circuit court found that Elliot was the owner of the vehicle and was entitled to possession. In its written decision, the court recounted that both parties had produced a title to the vehicle: "Elliot produced a copy of a title in which it lists her as the sole owner and that there are no lien holders for the property," and "Hansel produced a copy of a title showing" Nels as a lien holder,

and the title "was signed by Ms. Elliot on July 5, 2019, and lists Mr. Hansel as the proposed 'new' owner of the vehicle."

¶24 According to the circuit court, "[b]oth parties had conflicting stories, as to why Ms. Elliot signed the title in 2019." Elliot testified that she had signed the title but that Hansel's "name was not on [the title] when [she] signed," that the vehicle "was not ever to go to" Hansel, and that Hansel wrote his information on the title later. According to Elliot's testimony, Hansel told her that Nels "was supposed to come and take it back" and threatened her that "if [she] didn't sell it back to [Nels], he was going to put [her] in prison." In contrast, Hansel testified that when he had Elliot sign the title, the "understanding" was "that the vehicle was going to be titled in [his] name," but he admitted that he did not sign the title concomitantly with Elliot.

¶25 The circuit court specifically found Elliot to be "more credible" than Hansel on this issue. According to the court,

> It has been almost 5 years since Ms. Elliot signed the title. Mr. Hansel has not complied with Wisconsin law relating to titling and registering vehicles. As such, and based upon testimony of the parties, the Court believes that there was some aspect of fraud or evasion of legal requirements involved. Ignorance of the law and legal requirements is not a defense and it does not negate the law. As far as the State of Wisconsin is concerned, and this Court, the title is legally in Ms. Elliot's name and she is the legal owner of the property.

Thus, the court found it significant that, over five years, Hansel had never attempted to transfer the title through the DMV, *see* WIS. STAT. § 342.15, and it specifically found that the circumstances demonstrated evidence of "fraud or evasion of legal requirements." Accordingly, under the circumstances of this case, the court found that the replacement title listing Elliot as the owner was the clearer evidence of ownership.

12

¶26    There is ample evidence in the record to support the circuit court's findings.  Further, Hansel fails to address the court's finding of fraud, and, given his failure to file a reply brief, he has conceded Elliot's arguments on this issue on appeal.  Based on our review of the record, we conclude that the court's finding that Elliot was the owner of the vehicle was not clearly erroneous, and, as a result, the court's judgment of replevin must stand.

¶27    Hansel challenges the circuit court's determination by focusing on the fact of Elliot's signature on the title.  He appears to be arguing that, as a matter of law, "ownership of the vehicle in question was established upon the transferor's signature on a vehicle title and the transferee signs the title."  In support of his position, Hansel cites *National Exchange Bank v. Mann*, 81 Wis. 2d 352, 260 N.W.2d 716 (1978), which Hansel claims resolves the question of "when 'ownership' of a motor vehicle occurs."

¶28    In that case, "[t]he sole issue on … appeal [was] whether a transaction between National [Exchange Bank] and Kilbourn [American Leasing, Inc.] gave a security interest in a motor vehicle" that could be asserted "against the defendant, Donald L. Mann, who had previously bought and taken possession of the vehicle but had not secured a title certificate."  *Id.* at 356.  The court considered Wisconsin law and the Uniform Commercial Code, and it determined that vehicle ownership in Wisconsin is established by the contractual transfer and physical delivery of the vehicle, given that a certificate of title is considered evidence rather than conclusive proof of ownership.  *Id.* at 362-63.  Hansel interprets this holding to mean that "[i]t is the underlying legal transaction that divests ownership, not per se the immediate application made to the [DMV]."

13

¶29     We are not persuaded by Hansel's argument.  First, the facts in this case and ***Mann*** are materially different, and Hansel does not argue to the contrary. Therefore, the court's holding in ***Mann*** does not require a certain result here.

¶30     Instead, Hansel appears to argue that the holding in ***Mann*** demonstrates that the circuit court erred by considering the fact that Hansel never had the vehicle title transferred though the DMV.  We disagree with his assertion. The circuit court did not determine that Hansel's failure to transfer the title was conclusive proof of ownership in Elliot's favor.  Rather, the court saw the failure to transfer the title as evidence in support of Elliot's claim of fraud, which called into question what Hansel calls the alleged "underlying legal transaction."  The facts that Hansel did not sign the title contemporaneously with Elliot and did not transfer the title to his name through the DMV both support the court's determination that Elliot's testimony regarding her reason for signing the title was more credible.  In other words, the court found that Hansel was never the intended transferee.  As a result, the court determined that the replacement title was the best evidence of true ownership, and this finding was not clearly erroneous.

**III.  Title destruction**

¶31     The third, and final, question is whether the circuit court properly ordered that the original title to the vehicle be destroyed because Elliot had a replacement title listing her as the owner of the vehicle.  We need not resolve this question, however, because both parties appear to agree that the original title should be preserved until the appellate process is complete, at which time Hansel does not dispute that the title should be destroyed.  Once all of the appeals have been exhausted, and if the circuit court's ruling is upheld, then the original title must be surrendered to the DMV to be destroyed as per the circuit court's ruling.

*See* WIS. STAT. § 342.13(3) ("A person recovering an original certificate of title for which a replacement has been issued shall promptly surrender the original certificate to the department.").

    *By the Court.*—Judgment affirmed.

    This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.